**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lisa GORT–DiDONATO, Defendant–**
**Appellant.**

No. 96–1601.

United States Court of Appeals,
Sixth Circuit.

Argued March 5, 1997.

Decided March 27, 1997.

Julie Ann Woods, Asst. U.S. Attorney (argued and briefed), Grand Rapids, MI, for Plaintiff–Appellee.

Lisa Gort–DiDonato, Pekin, IL, pro se.

David L. Kaczor (argued and briefed), Grand Rapids, MI, for Defendant–Appellant.

Before: KEITH, KENNEDY, and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant, Lisa Gort–DiDonato, appeals the sentence she received following her guilty plea to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Defendant asserts that the District Court erred in enhancing her sentence under § 3B1.1(c) of the Sentencing Guidelines. That section imposes a two-level enhancement for being an organizer, leader, manager, or supervisor of a criminal activity consisting of at least one participant but fewer than five participants. For the reasons set forth below, defendant's sentence is **VACATED**.

**I.**

The offense conduct leading to defendant's conviction allegedly began when defendant visited St. Thomas, Virgin Islands, with an individual identified as Dennis Smith in July, 1992. According to defendant, Smith obtained cocaine from a Jamaican gang to deliver to Philadelphia. When Smith failed to deliver the drugs, he informed the gang that defendant absconded with the cocaine. When defendant started to receive strange phone calls and see strange people hanging around her neighborhood in Philadelphia, she believed that her life and the lives of her family members were in danger. When defendant shared this information with Richard Gaffney, her boyfriend, Gaffney told her that he was affiliated with the mafia and could provide protection to defendant and her family if she supplied him with money. Defendant then informed her family that they were in danger and that Gaffney could protect them if they wired money to him in Philadelphia.

From August 1, 1994, through April 8, 1995, the defendant and her parents wired a total of $134,251.00 to Gaffney in Philadelphia. Gaffney, Diane Blair, or others who were authorized by Gaffney to receive the money, would pick up the wired funds from Western Union. Defendant also, without authorization, withdrew money from a sister's account. Defendant admitted at the plea hearing that she was indeed afraid for her life at the outset but that, at some point, she questioned whether her life was truly in danger. Despite this realization, she nevertheless continued to obtain money from her parents using false statements.

According to the Presentence Report, an investigation of several individuals who were authorized to pick up funds from Western Union revealed that "Gaffney and the defendant were actually the ones who sphere headed [sic] the fraud" and that the "money was used to improve the lifestyle of the defendant and Gaffney, as she had planned to join Gaffney in Philadelphia at some point in the future." The money was also reportedly used to support the drug habits of Gaffney and Blair, as well as for Gaffney's lavish

trips, chauffeur-driven limousine rides, and expensive dinners.

As a result of this conduct, defendant was charged in a two-count indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343, and wire fraud, in violation of 18 U.S.C. § 1343. Defendant pled guilty to the conspiracy to commit wire fraud count pursuant to a plea agreement entered into with the Government. Defendant was sentenced to eighteen months incarceration to be followed by a three-year term of supervised release. In arriving at this sentence, the District Court increased defendant's offense level by two pursuant to the Sentencing Guidelines after concluding that defendant was an organizer, leader, manager, or supervisor in a criminal activity involving fewer than five participants under U.S.S.G. § 3B1.1(c).[1] The court enhanced her sentence under § 3B1.1(c) on the following grounds:

> ... It appears that Gort–Di Donato [sic] and Gaffney played major roles in planning the conspiracy. In particular, Gort–Di Donato [sic] played a major role in selecting her relatives, her own family, as the target of this crime. She made the assessment as to their finances. She made the persuasive argument to them to honor her requests. Under these circumstances, it appears to me that the Guideline was appropriately applied because the defendant Gort–Di Donato [sic] played a major role in planning the offense.

The offense was not narrow or limited given the use of both knowing and unknowing participants to accomplish the offense—unless by some reason Blair was an unknowing participant, or others—and the offense was a serious offense that involved bilking her own family out of large amounts of money over a fairly extended time period.

Defendant timely appeals from the sentence imposed by the District Court.

## II.

Defendant's sole argument on appeal is that the District Court erred in applying the two level enhancement of § 3B1.1(c) of the Sentencing Guidelines. We review the District Court's legal conclusions regarding the application of Sentencing Guidelines *de novo;* however, we accept the District Court's findings of fact unless they are clearly erroneous. *See United States v. Rutana,* 18 F.3d 363, 365 (6th Cir.1994). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.1989). To apply the § 3B1.1 enhancement, the government must establish, by a preponderance of the evidence, the elements of § 3B1.1. *See United States v. Ledezma,* 26 F.3d 636, 644 (6th Cir.1994).

Section 3B1.1 provides:

***Aggravating Role***

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1.

Prior to November 1, 1993, an enhancement was warranted under § 3B1.1(c) where the defendant exercised a managerial, leadership, organizational or supervisory role in a criminal enterprise and four or less individuals were involved in the criminal enterprise; the defendant need not have exercised control over a specific member of the conspiracy. To illustrate, in *United States v. Bashara,* 27

---

**1.** Defendant also received a two-level enhancement for more than minimal planning under

§ 2F1.1(b)(2) of the Guidelines.

F.3d 1174 (6th Cir.1994), this Court, applying subsection (b) of § 3B1.1 noted, "[t]he text of the Guidelines and its commentary does not require that five of the activity's participants be subordinate to the defendant; it merely requires that the activity involve five or more participants. In this case, at least five people participated in [the defendant's] criminal activity, and he played a role that may properly be categorized as that of 'manager or supervisor.'" *Id.* at 1184.

Similarly, in *United States v. Alexander*, 59 F.3d 36 (6th Cir.1995), we rejected the defendant's contention that an enhancement under § 3B1.1 was improper because he did not exercise control over any of his co-defendants in a drug conspiracy stating that "defendant [need not] directly employ or control a partnership or enterprise." *Id.* at 38; *see also United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir.1994). *Bashara* and *Schultz*, however, without expressly noting, applied the guideline and commentary articulated in § 3B1.1 in effect at the time the defendants were sentenced. In both cases, the guideline in effect at the time of sentencing did not include an amendment to the commentary which took effect November 1, 1993. That amendment, which is now articulated in Application Note 2 of the Commentary to § 3B1.1, provides:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1, comment. (n.2).

Application Note 2 was added to clarify confusion amongst the circuit courts as to the operation of § 3B1.1. *See* U.S.S.G., Appendix C, amendment 500. Prior to the amendment, some circuits had concluded that a defendant's control over the property, assets or activities of a criminal enterprise warranted a § 3B1.1 enhancement. *See, e.g., United States v. Chambers*, 985 F.2d 1263 (4th Cir. 1993). Other circuits, however, were of the view that an enhancement was proper only where the defendant exercised control over at least one participant in the enterprise. *See, e.g., United States v. Fuentes*, 954 F.2d 151 (3d Cir.1992); *United States v. Fuller*, 897 F.2d 1217 (1st Cir.1990).

As noted by the Seventh Circuit, the amended application note permits an increased sentence whether the defendant exercised control over an individual within the criminal enterprise or merely exercised control over the property, assets or activities of the enterprise. *See United States v. Fones*, 51 F.3d 663, 668 (7th Cir.1995); *see also United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1830, 134 L.Ed.2d 935 (1996). However, under the amended provision, the method by which the defendant's sentence is increased depends on whether the defendant exercised control over an individual or over tangible property, assets or activities of a criminal enterprise. *Fones*, 51 F.3d at 668; *Capers*, 61 F.3d at 1110. Where the defendant exerts control over at least one participant in a supervisory, managerial, leadership, or organizational capacity, a sentence enhancement is required under § 3B1.1. Whereas, where a defendant does not exercise control over an individual but over property, assets, or activities, an upward departure may be warranted.[2] *Fones*, 51 F.3d at 668; *Capers*, 61 F.3d at 1110.

Thus, as of November 1, 1993, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.[3] Our Circuit has yet to directly address the clarification set out in Application Note 2

---

[2]. In the instant case, the District Court did not depart upward from the Guidelines; thus, the language in Application Note 2 permitting an upward departure where the defendant exercised control over the property, assets, or activities of a criminal enterprise is inapplicable to the District Court's method of increasing the defendant's sentence.

[3]. Our Court in *Alexander*, discussed *supra*, briefly cited to Application Note 2 without discussion; however, as the defendant in *Alexander* was sentenced on March 10, 1993, the amended commentary did not apply to his sentence.

Even if the amendment had applied, in view of the facts recited by the Court in upholding the enhancement, it is apparent that the defendant,

of § 3B1.1. However, several cases in which the defendant, by virtue of the timing of the defendant's sentence, was entitled to the clarification set out in Application Note 2 are consistent with the note's interpretation of the guideline. While not expressly citing to Application Note 2, each have found an enhancement warranted where the defendant exercised a supervisory, organizational, leadership, or managerial role over at least one participant. These cases, thus, do not support the government's contention that a defendant's control over a scheme rather than over a participant in a scheme requires enhancement of a sentence under § 3B1.1.

For example, in *United States v. Bingham,* 81 F.3d 617 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 250, 136 L.Ed.2d 177 (1996), this Court rejected Defendant Petaway's argument that an enhancement was improper under § 3B1.1 because he "had an equal role in the conspiracy [with his two co-conspirators], did not manage them, and had less than five subordinates ..." *Id.* at 629. The Court appeared to be addressing only the last clause of defendant's argument when it stated that "[t]he text of the guideline and its commentary does not require that five of the activity's participants be subordinate to the defendant; it merely requires that the activity involve five or more persons." *Id.* Although the Court did not address Application Note 2,[4] it is clear that the enhancement was proper under the amended commentary. Petaway acted as a supplier of drugs to at least four dealers; he determined when to order and the purchase price of the contraband; he arranged the transportation of the contraband by couriers; and he determined when the gang would use weapons and violence in connection with the sale of drugs. *Id.* at 629–30.

Echoing the principles enunciated in *Bingham,* this Court in *United States v. Kraig,* 99 F.3d 1361 (6th Cir.1996), in response to the defendant's contention that an enhancement was improper under § 3B1.1, reiterated that "the evidence need not show that [the defendant] was the manager or supervisor of five other persons, but rather that he had a managerial or supervisory role in illegal conduct involving five or more persons." *Id.* at 1369. Without directly addressing the defendant's contention that enhancement was improper where he did not control or supervise any of his co-conspirators, the Court cited the evidence supporting the enhancement. The evidence justifying the enhancement was clearly consistent with the requirement imposed by Application Note 2 that a defendant must manage, supervise, lead, or organize at least one participant in a criminal enterprise. According to the Court, the evidence revealed that Kraig recruited lawyers and accountants to participate in a conspiracy to conceal the assets of a client from the Internal Revenue Service through foreign "shell" corporations. *Id.* at 1370. Kraig specifically recruited an attorney to consolidate his client's real estate holdings into the shell corporation called Gemstone Realty Corporation. Kraig also retained a member of a Panamanian law firm, a co-defendant in the case, for the purpose of forming Gemstone. *Id.* The Court additionally found that "Kraig provided information about [his client's] various holdings to the numerous accountants and lawyers working for [his client] and it was to Kraig that these persons turned for information regarding Gemstone." *Id.* Thus, the evidence in *Kraig* is consistent with the application note's requirement that a defendant supervise at least one participant in a criminal enterprise.

Donald Alexander, did control at least one of his co-defendants, Dorothy Cook. Alexander supplied drugs to Cook for resale, controlled where Cook's sales took place, determined who would be Cook's customers, processed and packaged the drugs sold by Cook, set the price of the contraband sold by Cook, and instructed Cook to make the sale to the government which led to the arrest of Alexander and Cook. *Id.* at 38–39.

4. It is unclear from the opinion why Application Note 2 was not discussed. If the Court applied the sentencing guidelines in effect at the time of

the defendant's sentencing, the amended commentary would have applied; defendant was sentenced on January 30, 1995. If, however, the Court applied the sentencing guidelines in effect at the time of the defendant's offense conduct, Application Note 2 would not have been in effect; defendant engaged in the criminal activity leading to his convictions between 1989 and the summer of 1993. *Bingham,* 81 F.3d at 621–22. Section 1B1.11 of the Guidelines directs our Court to apply the Guidelines in effect on the date the defendant is sentenced unless such application would violate the *Ex Post Facto* Clause

The defendant's sentence in the instant case was imposed subsequent to the effective date of Application Note 2. Accordingly, the amended commentary, clarifying the method to be used to increase a sentence when a defendant exercises control over a participant as opposed to when a defendant exerts control over the property, assets, or activities of a criminal enterprise, applies to her sentence. In the District Court's recitation of the grounds upon which it relied to enhance defendant's sentence, the court neither addressed Application Note 2 nor made a finding of fact as to whether defendant engaged in a supervisory, leadership, organizational, or managerial role over another participant in the scheme to defraud her parents. We, therefore, vacate the defendant's sentence and remand the case to the District Court for due consideration of Application Note 2 of the commentary following § 3B1.1.[5]

### III.

For the foregoing reasons, defendant's sentence is **VACATED** and the case is remanded to the District Court for proceedings consistent with this opinion.

of the Constitution. U.S.S.G. §§ 1B1.11(a), (b)(1).

**5.** Defendant also briefly submits that applying both the enhancement under § 3B1.1(c) and § 2F1.1(b)(2) for more than minimal planning constitutes double counting and is therefore impermissible. We squarely rejected this argument in *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996).