*RECOMMENDED FOR FULL-TEXT* PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0023P (6th Cir.)
File Name: 00a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

      *v.*

ADNAN BAHHUR,
    *Defendant-Appellant.*



No. 98-5386

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 95-20122—Jon Phipps McCalla, District Judge.

Argued: April 21, 1999

Decided and Filed: January 14, 2000

Before: SILER and MOORE, Circuit Judges; SMITH,
District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Bruce I. Griffey, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.
Lawrence J. Laurenzi, OFFICE OF THE U.S. ATTORNEY,

—————————

[*]The Honorable George C. Smith, United States District Judge for the
Southern District of Ohio, sitting by designation.

Memphis, Tennessee, for Appellee. **ON BRIEF:** Bruce I. Griffey, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Lawrence J. Laurenzi, OFFICE OF THE U.S. ATTORNEY, Memphis, Tennessee, for Appellee.

———————

## OPINION

———————

SMITH, District Judge. Defendant Adnan Bahhur appeals his sentence of 97 months' incarceration and 3 years' supervised release, following his guilty plea to engaging in a prohibited monetary transaction, in violation of 18 U.S.C. § 1957; food stamp fraud, in violation of 7 U.S.C. § 2024(b)(1); and failure to appear, in violation of 18 U.S.C. § 3146(a)(1).

On appeal, Bahhur raises the following issues: (1) whether the district court had subject matter jurisdiction over his offense of engaging in a prohibited monetary transaction; (2) whether the district court erred in calculating Bahhur's guideline score using the prohibited monetary transaction guideline, pursuant to U.S.S.G. § 2S1.2; (3) whether the district court erred in increasing Bahhur's sentence by three levels based on the value of the funds attributable to the defendant, pursuant to U.S.S.G. § 2S1.2(b)(2); (4) whether the district court erred in imposing a three-level increase in Bahhur's sentence for an aggravating role, pursuant to U.S.S.G. § 3B1.1; and (5) whether the district court erred in increasing defendant's sentence by three levels, pursuant to U.S.S.G. § 2J1.7 on his underlying prohibited monetary transaction conviction, instead of applying the enhancement to his conviction for failing to appear. For the following reasons, we affirm in part and reverse in part the judgment of the district court, and remand for resentencing.

imprisonment on a failure to appear count be imposed consecutively to any other sentence of imprisonment. Moreover, the court must also comply with 18 U.S.C. § 3147, which sets forth that the portion of the sentence attributable to an enhancement under U.S.S.G. § 2J1.7, must also run consecutively to any other sentence of imprisonment. Consequently, the court is required to impose a consecutive sentence of imprisonment under both of these provisions, however, neither statute requires a minimum term of incarceration.

For example, in the present case, the court must choose a total punishment between 70 and 87 months (Criminal History III, Combined Offense 25). Next, the court must apportion that sentence between the underlying offense, the failure to appear conviction, and the enhancement under U.S.S.G. § 2J1.7. If the court determined that a "total punishment" of 83 months is appropriate, a sentence of fifty-seven months on counts 10 and 34, seventeen months consecutive pursuant to 18 U.S.C. § 3146(b)(2) for failure to appear, and nine months consecutive pursuant to 18 U.S.C. § 3147 for commission of an offense while on release, would satisfy the statutory and sentencing guideline requirements.

## III.

For the foregoing reasons, the district court's judgment is **VACATED** to the extent that the district court must address its misapplication of section 2J1.7, and we **REMAND** this case for resentencing in accordance with this opinion. It is further ordered that the judgment of the district is **AFFIRMED** in all other respects.

| **Prohibited Monetary Transaction** | **Food Stamp Fraud** | **Failure to Appear** |
|---|---|---|
| 18 U.S.C. § 1957 | 7 U.S.C. 2024(b)(1) | 18 U.S.C. § 3146(a)(1) |
| (**17**) § 2S1.2 | (**6**) § 2F1.1 | (**6**) § 2J1.6(a)(2) |
| (**+3**) § 2S1.2(b)(2) | (**+9**)§ 2F1.1(b)(1)(J) | (**+9**) § 2J1.6(b)(2)(A) |
| (**+3**) § 3B1.1(b) | (**+3**) § 3B1.1(b) | *(+3) § 2J1.7* |
| *(+2) § 3C1.1/§ 2J1.6* | (**+2**) § 2F1.1(b)(2)(A) | *(+2) § 3C1.1/§ 2J1.6* |
| **25** | **22** | **18** |

(*These calculations assume that the defendant obstructed justice and was a manager or supervisor in both the prohibited monetary transaction and the food stamp fraud convictions.*)  The prohibited monetary transaction and food stamp fraud convictions would then be grouped in accordance with U.S.S.G. § 3D1.3(b), because the counts involved two or more acts and were connected by a common criminal scheme or plan.  Those two counts would then be grouped into one group with the failure to appear count based upon U.S.S.G. § 3D1.2(c). *See* U.S.S.G. § 2J1.6, Application Note 3 (indicating that in the case of a conviction on both the underlying offense and the failure to appear, the failure to appear is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense; and the failure to appear count and the count(s) for the underlying offense are grouped together under § 3D1.2(c)).  The defendant's offense level would then be ascertained by applying U.S.S.G. § 3D1.3(a), which instructs that the defendant's offense level is determined by applying the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group.

In this case, the defendant's prohibited monetary transaction conviction is the highest of the counts in the Group, thus, the defendant's combined Offense Level is twenty-five. The defendant has a Criminal History Category III. Therefore, the defendant's corresponding guideline range is 70-87 months of incarceration.

In devising a sentence, the court must look to 18 U.S.C. § 3146(b)(2), which dictates that any sentence of

---

## I.

Beginning in 1993 and continuing until 1995, the defendant Adnan Bahhur and seven other co-defendants engaged in a fraudulent food stamp redemption scheme.  The Bahhurs operated two convenience stores, United Family Foods Grocery and the Shop-N-Save Grocery.  At these stores, federal food stamp coupons were purchased at a discount for cash and redeemed for full value through the Federal Food Stamp Program by depositing the coupons in various bank accounts held in the names of grocery stores operated by the Bahhurs.

On November 25, 1997, the defendant pleaded guilty to Count 10, engaging in a prohibited monetary transaction in violation of 18 U.S.C. § 1957, and Count 34, food stamp fraud in violation of 7 U.S.C. § 2024(b)(1), in district court case number 95-20122; and one count of failing to appear in violation of 18 U.S.C. § 3146(a)(1), in district court case number 97-20227.[1]

On February 18, 1998, a revised presentence investigation report was prepared that calculated the defendant's guideline range to be 97-121 months based on a total offense level of 28 and a criminal history category III.  The defendant filed several objections to the presentence investigation report.

---

[1]On June 12, 1995, the Federal Grand Jury for the Western District of Tennessee returned a thirty-six count indictment against defendant Adnan Bahhur and seven co-defendants.  The indictment specifically charged Adnan Bahhur with: conspiracy to commit money laundering, money laundering, engaging in a prohibited monetary transaction, food stamp fraud, and unlawful possession and distribution of contraband cigarettes.

On August 2, 1995, the defendant failed to appear for a report date. On August 7, 1995, the district court signed a warrant for the defendant's arrest charging him with failure to appear in violation of 18 U.S.C. § 3146(a)(1).  The warrant was forwarded to the United States Marshal and was entered into the National Crime Information Center Computer.

On July 8, 1997, the defendant was arrested in Canada after returning from a flight to Israel.  The defendant was then extradited to the United States and charged with Failure to Appear in district court case number 97-20227.

On February 24 and 25, 1998, the district court conducted a sentencing hearing. At the sentencing hearing the court first addressed defendant's objection to the presentence report wherein the defendant received a three level enhancement under U.S.S.G. § 2S1.2(b)(2) based upon the value of the criminally derived funds being more than $350,000 but less than $600,000. The government relied upon the testimony of Special Agent Robert Johnson. Agent Johnson testified that he was able to locate six accounts which were used in the illegal food stamp enterprise.

Agent Johnson obtained records for these accounts from the period of September of 1994 to March of 1995. During this eight month period $440,933.00 was deposited into the accounts. Of that amount, food stamps constituted $393,843.00 or 88.5% of the deposits (JA Vol. I, 212; Ex. 3, JA Vol. II, 299). Moreover, Agent Johnson testified that during the time the defendant was cooperating with the government the defendant told him (Johnson) that the amount of legitimate sales for the store on Tillman was an average of one hundred and fifty to two hundred dollars a day (JA Vol. I, 229), and the two stores were open six days a week (JA Vol. I, 250). In addition, the defendant testified that only about half of the $393,843 in food stamps, including beer sales, was obtained fraudulently (JA Vol. I 256). The court did not find defendant to be a credible witness (JA Vol. I, 282).

The district court found that the value of criminally derived funds was greater than $350,000 but less than $600,000 (JA Vol. I, 179). The district court stated that:

> This involved multiple locations, multiple bank accounts, in all likelihood millions of dollars, and we just simply have a snapshot of a period of time which gives us a glimpse of what was transpiring. It is clear to me, and I think the evidence does preponderate in favor of the determination that these are not all the accounts and that monies were deposited, food stamps were deposited in other accounts. That's just from listening very carefully

U.S.S.G. § 2J1.7 indicates that "[b]ecause 18 U.S.C. § 3147 is an enhancement provision, rather than an offense, this section provides a specific offense characteristic to increase *the offense committed while on release*." (emphasis added). In fashioning a sentence which includes an enhancement under U.S.S.G. § 2J1.7, the district court must look to Application Note 2, which indicates:

> Under 18 U.S.C. § 3147, a sentence of imprisonment must be imposed in addition to the sentence for the underlying offense, and the sentence of imprisonment imposed under 18 U.S.C. § 3147 must run consecutively to any other sentence of imprisonment. Therefore, the court, in order to comply with the statute, should divide the sentence on the judgment form between the sentence attributable to the underlying offense and the sentence attributable to the enhancement. The court will have to ensure that the "total punishment" (*i.e.*, the sentence for the *offense committed while on release* plus the sentence enhancement under 18 U.S.C. § 3147) is in accord with the guideline range for the offense committed while on release, as adjusted by the enhancement in this section. (emphasis added).

Thus, when looking at the plain language of U.S.S.G. § 2J1.7 and the Application Notes to that section, it is clear that the district court erred when it applied the three level enhancement to defendant's underlying prohibited monetary transaction conviction.

Turning to the facts of this particular case, because there were multiple counts of conviction, the district court should have engaged in separate guideline calculations for each offense, including adding the enhancements to each offense separately. *See* U.S.S.G. Ch. 2 and Ch. 3, Pts. A, B and C. It appears from the record that the appropriate guideline calculation for each offense would be as follows:

the district court then turned to 18 U.S.C. § 3147, which provides:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to –
> (1) a term of imprisonment of not more than ten years if the offense is a felony; or
> (2) a term of imprisonment of not more than one year if the offense is a misdemeanor.
> A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

Section 2J1.7 was promulgated to effectuate the mandate of 18 U.S.C. § 3147, and under § 2J1.7 the Guidelines provide: "If an enhancement under 18 U.S.C. § 3147 applies, add 3 levels to the offense level for the *offense committed while on release* as if this section were a specific offense characteristic contained in the offense guideline for the offense committed while on release." (emphasis added).

In determining the manner in which to apply U.S.S.G. § 2J1.7, we utilize the basic rules of statutory construction because the Guidelines should be interpreted as if they were a statute. *See United States v. Hayter Oil Co. Inc.*, 51 F.3d 1265, 1272 (6th Cir. 1995). Moreover, we follow the clear, unambiguous language of the guidelines if there is no manifestation of a contrary intent. *See United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990) (citing *United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir. 1989)), cert. denied, 498 U.S. 840, 111 S.Ct. 117, 112 L.Ed.2d 86 (1990); *see also United States v. Carroll*, 893 F.2d 1502, 1510 (6th Cir. 1990) (indicating that in the absence of any contrary intent the clear language of the guidelines is to be applied or given effect).

United States Sentencing Guideline § 2J1.7 is not ambiguous, as it clearly states that it applies to "the offense committed while on release," which in this case was the failure to appear conviction. The Application Notes under § 2J1.7 confirm that the enhancement is to be applied to the offense committed while on release. Application Note 1 to

to Mr. Bahhur's own testimony. . . . I will tell you that if we had to say what was the exact amount, I couldn't do it. I could tell you that I believe it is very substantially in excess of $350,000, but I don't know that anybody would ever be able to do that. . . . I know from my experience with these cases that these percentages of food stamps will be extremely high. I can almost take judicial notice of facts such as that. When you get to 90 plus percent, when you get 84 percent, you're way way past any legitimate operation, and the suggestion that somehow being in a neighborhood that had Section 8 housing and had public housing, that would not affect the fact that the testimony supported the conclusion that most of the sales from these – when there were sales, most of the sales were of beer and cigarettes, which are non food stamp items. . . .

(JA Vol. I, 279).

The defendant then objected to the enhancement under U.S.S.G. § 3B1.1 for his role in the offense. In addressing the management role issue, the government elicited the testimony of Agent Johnson who characterized the defendant as being responsible for conducting the banking in five of the accounts. In addition, Agent Johnson indicated that Adnan Bahhur recruited a co-defendant, Robert Davis, to open up two of the accounts in Davis' name (JA Vol. I, 215). Johnson explained that Robert Davis would sign the checks in blank and defendant would be responsible for filling in the remaining portions of the check (JA Vol. I at 204). Moreover, Johnson indicated that a third and fourth account in the name of Eagle Food Market #2 and S&S Market were opened by the defendant using the alias of Judeh Fiaz (JA Vol. I, 208).

The district court applied a three level enhancement pursuant to U.S.S.G. § 3B1.1 because defendant was the signator on the bank accounts, and thus had control of the accounts and assets. Specifically, the district court stated that "the person who was in charge of these accounts, which was

really the only thing that mattered was Adnan Bahhur." (JA Vol. I, 277).

The defendant then objected to the three level enhancement pursuant to U.S.S.G. § 2J1.7 for committing an offense while on release. The district court found that the presentence report was correct and that the guidelines allow for an enhancement for committing an offense while on release to be added to the underlying offense along with the obstruction of justice enhancement, pursuant to U.S.S.G. §§ 2J1.6 and 3C1.1.

Defendant then argued that the district court lacked subject matter jurisdiction over his conviction under 18 U.S.C. § 1957. Defendant maintained that his offense level in the PSI report was incorrect because his offense level should have been calculated using U.S.S.G. § 2F1.1 relating to fraud. The district court rejected defendant's position and relied on its earlier decision on defendant's motion to dismiss, finding that the sums involved in the fraudulent food stamp transactions can be aggregated (JA Vol. I, 80).

The district court then adopted the presentence report and determined the defendant's total offense level to be 28 and his criminal history score to be a category III (JA Vol. I, 287). The defendant was sentenced to 97 months of incarceration: fifty-seven months on the underlying offenses of food stamp fraud and engaging in a prohibited monetary transaction, seventeen months consecutive pursuant to 18 U.S.C. § 3146(b)(2) for failure to appear, and twenty-three months consecutive pursuant to 18 U.S.C. § 3147 for commission of an offense while on release, to be followed by three years of supervised release and a special assessment of $150. The Judgment was filed on March 2, 1998, and defendant filed his notice of appeal on March 4, 1998.

accounts to pass the food stamps and deposit funds. In addition, Davis would also pre-sign blank checks for the Bahhurs so that they could withdraw cash and avoid detection from authorities.

Viewing the evidence in its entirety, we find that the district court was not clearly erroneous in finding that Mr. Bahhur played an aggravating role in the offense.

## E. Sentencing Increase For Commission of An Offense While on Release

Defendant argues that the district court erred in increasing his sentence by three levels, pursuant to U.S.S.G. § 2J1.7 on his underlying money laundering transaction, instead of applying the enhancement to his conviction for failing to appear. The government maintains that the defendant's offense level computation is correct and that it adequately considers both the original offense and the separate offense for failing to appear. The appellate court reviews *de novo* a sentencing court's interpretation of the guidelines. *See United States v. Watkins*, 994 F.2d 1192, 1195 (6th Cir. 1993).

In the case at bar, defendant was convicted of multiple offenses including one count of failure to appear under 18 U.S.C. § 3146. In calculating the defendant's offense level, the district court determined that the defendant's convictions should be grouped into a single group. The court then applied several sentencing enhancements including an enhancement pursuant to U.S.S.G. § 2J1.7 for committing an offense while on release. The three level enhancement under § 2J1.7 was based upon the defendant's failure to appear conviction.[4] Upon enhancing the defendant's offense level under § 2J1.7,

---

[4] The Sixth Circuit Court of Appeals in *United States v. Benson*, 134 F.3d 787, 788 (6th Cir. 1998), established that 18 U.S.C. § 3147, which provides for an enhanced sentence if defendant commits an offense while released on bond, and U.S.S.G. § 2J1.7 which provides for a three level increase for offenses committed while on release, apply to a defendant convicted of failing to appear.

The guideline provides in relevant part:

Based on the defendant's role in the offense, increase the offense level as follows:

. . . .

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

U.S.S.G. § 3B1.1. The presentence investigation report recommended that the district court find that Bahhur played an aggravating role in the offense as a manager or supervisor of a criminal enterprise involving five or more participants and accordingly increase his sentence by three levels.

The district court found that Bahhur's food stamp ring clearly involved more than five participants. In addition, the district court concluded that Bahhur was a manager or supervisor within the definition of the Sentencing Guidelines, reasoning that, "[w]hile it may not have been the strictest run organization in the world, the person who was in charge of these (bank) accounts, which was really the only thing that mattered, was Adnan Bahhur . . . . He was the key person. Without him, they might not have been able to open the accounts." Further, the district court noted that Bahhur was responsible for recruiting Robert Davis. Therefore, the district court increased defendant's sentence by three levels.

The record provides ample support for the district court's conclusion that Mr. Bahhur was a manager or supervisor of the food stamp operation. Mr. Bahhur admitted that he was responsible for opening and closing the various bank accounts which the two stores used in their food stamp scheme. The defendant also admitted that he had an employee named Robert Davis who would pose as the owner of the VFF Market and would open various bank accounts through which the Bahhurs passed the food stamps and deposited the funds. Once the accounts were open, the Bahhurs would use the

**A. District Court's Subject Matter Jurisdiction**

Defendant Bahhur argues that the district court lacked subject matter jurisdiction over his conviction under 18 U.S.C. § 1957. Defendant maintains that 18 U.S.C. § 1956 defines "specified unlawful activity" for purposes of 18 U.S.C. § 1957 as a felony (singular) food stamp transaction (singular) that involves a quantity of coupons having a value of not less than $5,000. Defendant sets forth that he never engaged in a transaction involving a quantity of coupons in excess of $5,000, therefore, the district court was without subject matter jurisdiction. "Questions of subject matter jurisdiction are questions of law that are reviewed *de novo*." *United States v. Yanott*, 42 F.3d 999, 1003 (6th Cir. 1994).

Title 18 United States Code § 1957, states in relevant part:

(A) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b) . . . .

(f) As used in this section –
(3) the term "specified unlawful activity" has the meaning given that term in section 1956 of this title.

Title 18 United States Code § 1956(c)(7)(D) defines specified unlawful activity as, "[a]ny felony violation of section 15 of the Food Stamp Act of 1977 (relating to food stamp fraud) involving a quantity of coupons having a value of not less than $5,000 . . . ."

Defendant maintains that the district court did not have subject matter jurisdiction over his 18 U.S.C. § 1957 conviction because 18 U.S.C. § 1956 requires that each fraudulent food stamp transaction involve a quantity of coupons worth $5,000. The government argues that the

district court did in fact have subject matter jurisdiction over defendant's conviction under 18 U.S.C. § 1957, because § 1957 is an offense against the laws of the United States as described under 18 U.S.C. § 3231.

Title 18, United States Code § 3231 provides in relevant part, "The District Courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Mr. Bahhur pleaded guilty to a violation of 18 U.S.C. § 1957. Title 18, United States Code § 1957 is a federal statute that is clearly an "offense against the laws of the United States." Therefore, the district court had subject matter jurisdiction over defendant's conviction under 18 U.S.C. § 1957. Accordingly, the Court believes that defendant has misstated the nature of his objection on this matter. Defendant's argument regarding the quantity element of 18 U.S.C. § 1956 is an attack against the sufficiency of the evidence necessary to sustain a conviction under 18 U.S.C. § 1957, not an argument against the district court's subject matter jurisdiction.

The government contends that defendant's failure to enter a conditional guilty plea prevents him from raising arguments against his conviction under 18 U.S.C. § 1957 upon appeal. The government maintains that review of defendant's conviction under 18 U.S.C. § 1957 is precluded by Rule 11(a)(2) of the Federal Rules of Criminal Procedure.

Under Federal Rule of Criminal Procedure 11(a)(2), a defendant is permitted to enter a conditional plea of guilty or nolo contendere while reserving the right "on appeal from the judgment, to review of the adverse determination of any specified pre-trial motion." The term "specified pre-trial motion" incorporates all questions that are collateral to a determination of guilt or innocence. *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991) (referring to the Notes of the Advisory Committee on Rules for the 1983 Amendments to Rule 11(a), reprinted in 18 U.S.C. Rules 1-11 at 359). "[A] defendant forecloses all subsequent non-jurisdictional appeals

admitted that the two stores did approximately one hundred and fifty to two hundred dollars a day in legitimate business, and that most of the business was in cigarettes and beer, neither of which could be purchased legally with food stamps.

In the case at bar, the defendant was an integral part of the joint criminal activity, and therefore, all actions of his co-conspirators were both foreseeable and within the scope of the criminal agreement. The enterprise took in approximately $393,000 in food stamps during the sample eight-month period, and only a small portion of the food stamps deposited into the accounts could be attributed to legitimate business. Moreover, the defendant admitted that he and his family had been purchasing food stamps since 1993, and that there were other accounts in which food stamps were deposited which were not discovered by the government. Thus, the district court properly found that the defendant's offense level should be increased by three points pursuant to U.S.S.G. § 2S1.2(b)(2) on the basis that the value of the funds involved was greater than $350,000.

Based on the foregoing, we find adequate factual support for the three level increase in defendant's sentence pursuant to U.S.S.G. § 2S1.2(b)(2).

### D.  Sentencing Increase for Aggravating Role

Defendant appeals the district court's imposition of a three level increase in his sentence, pursuant to U.S.S.G. § 3B1.1, based on the district court's finding that he played an aggravating role in the offense as a manager or supervisor. This court reviews the district court's factual findings in its application of the Sentencing Guidelines for clear error. *See United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gort-DiDonato*, 109 F.3d at 320 (quoting *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989)).

*United States v. Kohlbach*, 38 F.3d 832, 835 (6th Cir. 1994). Nonetheless, the government bears the burden of proving a sentencing enhancement by a preponderance of the evidence. *See United States v. Berridge*, 74 F.3d 113, 116 (6th Cir. 1996). The appellate court reviews the district court's legal conclusions *de novo* and accepts the district court's factual findings unless clearly erroneous. *See United States v. Rutana*, 18 F.3d 363, 365 (6th Cir. 1996).

The guideline for a violation of 18 U.S.C. § 1957 is set forth under U.S.S.G. § 2S1.2. Under § 2S1.2(a), the base offense level is seventeen. Although the base offense level is seventeen, the guidelines also direct the court to consider the amount of funds that the defendant knew were the proceeds of an unlawful activity, which serves as a specific offense characteristic enhancement. Here, the district court found that Bahhur knew that more than $350,000 was criminally derived property for an enhancement of three levels under U.S.S.G. § 2S1.2(b)(2). We review this finding for clear error.

In determining the amount of loss, the district court relied upon Exhibit 3 and the testimony of Special Agent Robert Johnson of the Internal Revenue Service. Special Agent Johnson testified in accordance with Exhibit 3 that he was able to locate six accounts which were used in the illegal food stamp enterprise run by Mr. Bahhur and the other co-defendants. Agent Johnson obtained records for these accounts from a period of September of 1994 to March of 1995. During this eight month period $440,933 was deposited into the accounts. Of that amount, food stamps constituted $393,843 or 88.5% of the deposits. Agent Johnson was only able to identify $5,504.07 in checks to distributors from the accounts.

Mr. Bahhur operated the illegal enterprise for two years. Agent Johnson obtained the bank records of the enterprise representing an eight month period. The defendant admitted that the Bahhur family had been purchasing food stamps since 1993, and that there were other accounts in which food stamps were deposited. Moreover, the defendant also

to his conviction by pleading guilty or nolo contendere." *Pickett*, 941 F.2d 411, 416 (citing the Notes of the Advisory Committee on Rules for the 1983 Amendments to Rule 11(a), reprinted in 18 U.S.C. § 1-11 at 358 which cites *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) and *Lott v. United States*, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961)). Moreover, "in the absence of a court-approved reservation of issues for appeal, [a defendant pleading guilty] waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (cited in *Pickett*, 941 F.2d at 416).

In the case at bar, the defendant, prior to pleading guilty, filed a pre-trial motion to dismiss the prohibited monetary transaction count on the basis that the district court failed to meet the prerequisite set out under the statute. The government opposed the motion and subsequently the district court denied defendant's motion. On November 25, 1997, pursuant to a guilty plea the defendant pleaded guilty to Count 10 charging the defendant with engaging in a prohibited monetary transaction and Count 34 charging food stamp fraud in case number 95-20122, and Count 1 charging the defendant with failure to appear in case number 97-20227. The plea agreement that the defendant signed and the district court accepted was not a conditional plea pursuant to Fed. R. Crim. P. 11(a)(2), nor did defendant indicate to the district court that he was preserving his right to appeal the district court's decision on his motion to dismiss. The defendant then raised the same argument in both his written objections to the presentence report and during the sentencing hearing and the district court again overruled defendant's objection.

As stated above, although defendant characterized his objection as an argument against the district court's subject matter jurisdiction, in fact, it was an argument against the sufficiency of the government's evidence based on defendant's interpretation of 18 U.S.C. §§ 1956 and 1957. This was a non-jurisdictional collateral attack against his

conviction. Therefore, by failing to enter into a conditional plea under Rule 11(a)(2), Mr. Bahhur waived his right to appeal the district court's denial of his pre-trial motion to dismiss the prohibited monetary transaction count on the basis of insufficient evidence. *See Pickett*, 941 F.2d at 416-17.

Based on the above, the Court finds that the district court had subject matter jurisdiction over defendant's conviction under 18 U.S.C. § 1957. Moreover, the defendant's objection regarding the government's proof of the quantity element under 18 U.S.C. §§ 1956 and 1957 is actually an objection to the sufficiency of the government's evidence concerning that element. Such an objection can be waived, and accordingly, defendant's failure to enter into a conditional guilty plea prevents him from raising this argument against his conviction upon appeal.

## B.  District Court's Application of the Money Laundering Guideline

The defendant next argues that the district court committed error in calculating his base offense level using the money laundering guideline[2], U.S.S.G. § 2S1.2, instead of the fraud guideline, U.S.S.G. § 2F1.1, because the district court lacked subject matter jurisdiction over defendant's conviction under 18 U.S.C. § 1957.[3]

Appellate review of sentences imposed under the Sentencing Guidelines is generally governed by 18 U.S.C. § 3742. *See United States v. Flowers*, 55 F.3d 218, 220 (6th Cir. 1995) (citing *United States v. Morrison*, 983 F.2d 730,

---

[2]The defendant refers to the money laundering guideline, however, the defendant's conviction under 18 U.S.C. § 1957 falls under U.S.S.G. § 2S1.2 which addresses the crime of engaging in a monetary transaction in property derived from a specified unlawful activity.

[3]Defendant concedes that his argument is predicated upon the Court finding that the district court lacked subject matter jurisdiction over his conviction under 18 U.S.C. § 1957.

731-32 (6th Cir. 1993)). Under § 3742, the appellate court reviews *de novo* the sentencing court's interpretation of the Guidelines. *See United States v. Watkins*, 994 F.2d 1192, 1195 (6th Cir. 1993).

According to U.S.S.G. § 1B1.2(a), a defendant's base offense level is determined by applying the guideline section most applicable to the offense of conviction, i.e., the offense conduct charged in the count of indictment or information for which the defendant was convicted. Moreover, U.S.S.G. § 3D1.3(a) instructs that in the case of counts grouped together, the defendant's offense level is determined by applying the most serious of the counts comprising the Group.

In the instant case, Mr. Bahhur was convicted of engaging in a prohibited monetary transaction, in violation of 18 U.S.C. § 1957; food stamp fraud, in violation of 7 U.S.C. § 2024(b)(1); and failure to appear, in violation of 18 U.S.C. § 3146(a)(1) . As addressed previously, the district court had subject matter jurisdiction over defendant's 18 U.S.C. § 1957 conviction, and the defendant's failure to enter a conditional guilty plea prevents him from attacking his conviction upon appeal. Accordingly, the district court properly calculated Mr. Bahhur's base offense level utilizing the prohibited monetary transaction guideline set forth under U.S.S.G. § 2S1.2 and in accordance with the grouping rules of U.S.S.G. § 3D1.3(a).

## C.  Value of Funds Attributable to Defendant

Defendant further argues that the district court erred in determining that defendant's offense level should be increased by three points pursuant to U.S.S.G. § 2S1.2(b)(2) on the basis that the value of the funds involved was greater than $350,000 but less than $600,000. The government submits that the record sufficiently supports the district court's finding as to the amount of loss attributable to the defendant.

In calculating the amount of loss figure, the Court recognizes that the district court is given some leeway. *See*