**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marie B. LONG and Inez Jean Seals,**
**Defendants–Appellants.**

**Nos. 01–5393, 01–5497.**

United States Court of Appeals,
Sixth Circuit.

March 11, 2002.

Before RYAN and GILMAN, Circuit Judges; and POLSTER, District Judge.*

OPINION

GILMAN, Circuit Judge.

Marie B. Long and her sister, Inez Jean Seals, were indicted on multiple counts of mail fraud, health care fraud, and various money laundering offenses. They each pled guilty to one count of health care fraud and one count of money laundering. The district court then sentenced Long to 30 months and Seals to 32 months in prison, in addition to ordering special assessments, restitution, and terms of supervised release. Both defendants now appeal,

claiming that the district court erred in sentencing them pursuant to the money laundering guidelines and in not granting their various motions for downward departures. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Between 1991 and 1998, the defendants applied for numerous hospital indemnity insurance policies. The type of policy in question pays a fixed-dollar benefit directly to the insured for each day that the insured spends in the hospital. On their insurance application forms, the defendants provided false information about their health history and the extent to which they were covered by other insurers.

After the defendants obtained the hospital indemnity insurance policies, they filed numerous fraudulent claims for compensation, including false representations about their health history and the absence of other insurance coverage. Overall, Long and Seals defrauded various insurance companies of $308,300.63 and $831,471.69, respectively.

### B. Procedural background

On March 29, 2000, the defendants were indicted for participating in: (1) a mail fraud scheme, in violation of 18 U.S.C. § 1341; (2) a health care fraud scheme, in violation of 18 U.S.C. § 1347; (3) various money laundering offenses, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957.

Long pled guilty to a health care fraud offense (Count 16) and a money laundering

---

* The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

violation (Count 30). The health care fraud offense occurred on October 1, 1996, relating to Long's application for insurance from the United States Life Insurance Company. Long's money laundering violation involved her purchase of property on May 27, 1995 for $31,900.

Seals also pled guilty to a health care fraud offense (Count 13) and a money laundering violation (Count 32). The health care fraud offense occurred on January 25, 1998, involving Seals's claim on a Standard Life and Accident Insurance Company policy. Seals's money laundering violation concerned a $15,500 payment that she received from Long on March 5, 1998.

The Presentence Investigation Report (PSR) for Long grouped together the two counts to which she pled guilty pursuant to United States Sentencing Guidelines § 3D1.2(d). Long's money laundering violation resulted in a base offense level of 17. The base offense level was then increased by two points pursuant to § 2S1.2(b)(1)(B) because the proceeds used in the money laundering stemmed from violations of the mail fraud statute, and an additional two points were added pursuant to §§ 2S1.2(b)(2) and 2S1.1(b)(2)(C) because Long laundered at least $308,300.63. After a deduction of three points pursuant to §§ 3E1.1(a) and (b) for acceptance of responsibility, the PSR concluded that Long's adjusted offense level was 18.

The PSR for Seals also grouped together the two counts to which she pled guilty pursuant to United States Sentencing Guidelines § 3D1.2(d). Seals's money laundering violation resulted in the same base offense level of 17 as determined for Long. The base offense level was then increased by two points pursuant to § 2S1.2(b)(1)(B) because the proceeds used in the money laundering stemmed from violations of the health care fraud statute, and an additional four points were added pursuant to §§ 2S1.2(b)(2) and 2S1.1(b)(2)(E) because Seal laundered at least $831,471.69. After a deduction of three points pursuant to §§ 3E1.1(a) and (b) for acceptance of responsibility, the PSR concluded that Seals's adjusted offense level was 20.

At the sentencing hearing, the district court denied Long's motions for downward departures that were based upon her ill health and her contention that the money laundering guidelines were improperly applied. The district court then sentenced Long to concurrent 30–month terms of imprisonment, three years of supervised release, a $200 special assessment, and $308,300.63 in restitution.

Seals was granted a downward departure because of her substantial assistance to the government, but her motion for downward departures based upon the same general contentions as raised by Long was denied. The district court then sentenced Seals to concurrent 32–month terms of imprisonment, three years of supervised release, a $200 special assessment, and $831,471.69 in restitution.

This timely appeal by both defendants followed.

## II. ANALYSIS

### A. Sentencing pursuant to the money laundering guidelines

The defendants each claim that the district court erred in sentencing them pursuant to the money laundering guidelines instead of the health care fraud guidelines. Their specific claims, however, differ. In analyzing the defendants' claims, we review de novo the district court's interpretation of the United States Sentencing Guidelines. *United States v. Jones,* 159 F.3d 969, 980 (6th Cir.1998).

■ Long claims that the district court erred in sentencing her pursuant to the money laundering guidelines because the date of her money laundering offense occurred on May 27, 1995, over one year before health care fraud was added as a "specified unlawful activity" pursuant to 18 U.S.C. § 1957. This argument is premised on Long's belief that "the criminal conduct underlying the money laundering offense of conviction ... was health care fraud." In the alternative, Long argues that the district court erred in increasing her base offense level by two points pursuant to United States Sentencing Guidelines § 2S1.2(b)(1)(B) on the basis that she "knew that the funds were the proceeds of ... 'specified unlawful activity.'"

Long's argument fails because her guilty plea waived all nonjurisdictional issues, *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir.2001), and the issue of whether the facts support a sentence pursuant to the money laundering guidelines as opposed to the health care fraud guidelines is a nonjurisdictional issue. *United States v. Bahhur*, 200 F.3d 917, 922 (6th Cir.2000). Bahhur similarly claimed that the district court erred in applying the money laundering guidelines because he allegedly did not engage in a "specified unlawful activity" pursuant to 18 U.S.C. § 1957. This court held that Bahhur's failure to enter into a conditional guilty plea prevented him from raising this argument on appeal. *Id.* at 923.

■ Furthermore, even if we were to consider the merits of Long's claim, it is clear that the district court did not err in sentencing her pursuant to the money laundering guidelines. The indictment states that the underlying "specified unlawful activity" for Count 30 was both health care fraud *and* mail fraud. Because mail fraud is a "specified unlawful activity" pursuant to 18 U.S.C. § 1957, and

was so long before May 27, 1995, the district court did not err in sentencing Long pursuant to the money laundering sentencing guidelines.

■ Seals, on the other hand, maintains that, under *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), she should not have been sentenced under the money laundering statute because "her activities were not the type that the statute was designed to combat." Her argument, however, is without merit. The conduct underlying Seals's indictment for money laundering took place on March 5, 1998. At that time, both health care fraud and mail fraud were identified as "specified unlawful activit[ies]" pursuant to 18 U.S.C. § 1957.

This court has held that if an offense is included within the definition of "specified unlawful activity," the district court should not depart downward absent a "showing of particular factors of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *United States v. Ford*, 184 F.3d 566, 588 (6th Cir.1999) (internal quotation marks and citation omitted). Seals has not put forth sufficient reasons for us to conclude that her offense was outside of the heartland of the money laundering guidelines. *United States v. Rashid*, 274 F.3d 407, 420 (6th Cir.2001) (upholding the application of the money laundering guidelines in a case where the "specified unlawful activity" was mail fraud).

Furthermore, the cases from other circuits cited by Seals in support of her position are clearly distinguishable because, unlike, for example, *United States v. Woods*, 159 F.3d 1132 (8th Cir.1998), this case involved more than the simple receipt of a check from an insurance company and a deposit of that check into a bank account. The transaction underlying Seals's money

laundering conviction involved, instead, the transfer of fraudulently obtained funds that had already been deposited into Long's bank account.

## B. Downward departures pursuant to §§ 5H1.4, 5K2.13, and 5K2.0

Long and Seals each claim that the district court erred by failing to find that their extraordinary physical impairments justified a downward departure pursuant to United States Sentencing Guidelines § 5H1.4. In particular, Long claims that her physical ailments–including hypertension, obesity, melanoma, fibromyalgia, sleep apnea, knee problems, and back problems–justify a downward departure pursuant to § 5H1.4. In addition, Long maintains that the district court erred by refusing to depart downward pursuant to United States Sentencing Guidelines § 5K2.13 despite her significantly reduced mental capacity. Seals, in a similar vein, argues that her recent hip replacement, in combination with her other multiple infirmities, constitute an extraordinary physical impairment justifying a downward departure pursuant to § 5H1.4.

Long also claims that the district court erred in not granting her a downward departure pursuant to United States Sentencing Guidelines § 5K2.0. Section 5K2.0 provides that the sentencing court may depart from the applicable guidelines range if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S. Sentencing Guidelines Manual § 5K2.0 (quoting 18 U.S.C. § 3553(b)). In arguing that a downward departure pursuant to § 5K2.0 was appropriate, Long emphasizes that she has multiple physical and mental prob-

lems, that her cooperation with the government is well-documented, and that her offense conduct was outside of the "heartland" of the money laundering guidelines.

■ As the government points out, however, a district court's decision not to depart downward is not an appealable decision unless the district court did not believe that it had the discretion to do so. *United States v. Prince,* 214 F.3d 740, 766 (6th Cir.2000). This court in *Prince* set forth our standard of review as follows:

> We examine the sentencing hearing transcript to determine whether the district court's refusal to depart downward was an exercise of discretion or a legal determination that it lacked the authority to depart.... The district court judge has no duty to state affirmatively that he knows he possesses the power to depart downward but declines to do so.

*Id.* Because the district court considered the relevant facts and evaluated the merits of Long's motion for a downward departures pursuant to §§ 5H1.4 (Physical Condition), 5K2.13 (Diminished Capacity), and 5K2.0 (Other Grounds for Departure) prior to sentencing her, we have no doubt that the district court was aware of its discretion to grant the downward departures to Long.

The government also argues that the district court declined to depart downward pursuant to § 5K2.0 because Long's motion was based in part on her alleged substantial assistance to the government, and that the government had not moved for a downward departure under § 5K1.1. Section 5K1.1 specifically addresses substantial assistance, and generally requires that the government move for a downward departure on this ground before the sentencing court will consider the matter. *United States v. Hawkins,* 274 F.3d 420, 426 (6th Cir.2001) ("A district court generally lacks the authority to grant a

downward departure pursuant to [§ 5K1.1] absent a motion by the government."). Contrary to the government's position, however, a review of the sentencing hearing indicates that the district court evaluated the merits of Long's motion for a downward departure pursuant to § 5K2.0, not § 5K1.1. This refutes the government's argument that the district court felt bound not to depart downward under § 5K2.0, as opposed to simply declining to exercise its discretion to do so.

Although the district court did not expressly rule on Seals's motion for a downward departure pursuant to § 5H1.4 (for extraordinary physical impairments), there is no reason to believe that the court was unaware that it had the authority to grant a downward departure. This is particularly true given that, during the same sentencing hearing, the court considered the merits of Long's motion for a downward departure on identical grounds. As the government points out, the district court's failure to expressly rule on Seals's parallel motion under these circumstances was nothing more than a harmless oversight. Because the district court was aware of its discretion to depart downward pursuant to §§ 5H1.4, 5K2.13, and 5K2.0, and simply declined to exercise that discretion, the district court's refusal to depart downward is nonappealable. *United States v. Brown,* 66 F.3d 124, 128 (6th Cir.1995) ("[A] lower court's informed decision not to depart from a valid guideline range is not reviewable.").

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.