**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Rico ALEXANDER,
Defendant–Appellant.**

**No. 93–1947.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1994.

Decided July 10, 1995.

Amy B. Hartmann, Office of the U.S. Atty., Detroit, MI (argued and briefed), for plaintiff-appellee.

Warren E. Harris, Detroit, MI (argued and briefed), for defendant-appellant.

Before: KEITH, JONES, and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant Donald Rico Alexander appeals the sentence imposed following his conviction for possession with intent to distribute cocaine and cocaine base, distribution of cocaine, and conspiracy. On appeal, the only question before this court is whether the lower court erred in concluding that Alexander was the leader of the drug distribution conspiracy, thus warranting a two-level sentence enhancement pursuant to section 3B1.1 of the sentencing guidelines. United States Sentencing Commission, Guidelines Manual, § 3B1.1 (1993). After reviewing the trial record and considering the arguments raised on appeal, we affirm Alexander's sentence.

## I.

In fall 1991, Officer Kyra Hope of the Detroit Police Department received information that Donald Rico Alexander was distributing cocaine in the Detroit area. Hope also learned that Elvis Presley Jones and Dorothy Jean Cook were assisting Alexander in his drug distribution. Apparently, Alexander supplied Jones who, in turn, supplied Cook. On December 5, 1991, Officer Hope participated in a raid of Jones's house, in which cocaine and heroin were discovered. Shortly thereafter, Officer Hope met Cook and gained her confidence. In her efforts to make a direct purchase from Alexander, Officer Hope was able to get Cook to forward Hope's phone number to Alexander on the belief that Hope wanted to make a large purchase of cocaine. Alexander phoned Officer Hope and arranged a direct sale. As a result of this conversation, on March 11, 1992, Alexander met with Officer Hope and sold her one-eighth of a kilogram of cocaine at a cost of $3500.00. Alexander was subsequently arrested and charged, along with co-defendants Cook and Jones, in an eight-count indictment.

At Alexander's jury trial, both Jones and Cook testified against Alexander, as required by the terms of their plea agreements. The jury found Alexander guilty of one count of conspiracy to possess with intent to distribute cocaine and cocaine base, one count of aiding and abetting possession with intent to distribute and distribution of cocaine base, one count of distribution of cocaine, and one count of possession with intent to distribute cocaine.

On March 10, 1993, Alexander was sentenced. The sentencing court determined that Alexander had a leadership role in the conspiracy and enhanced his offense level pursuant to USSG § 3B1.1. This enhancement increased Alexander's offense level from 28 to 30, and his sentencing range from 78–97 months to 97–121 months.[1] The court sentenced Alexander to 121 months incarceration followed by four years supervised release. This appeal followed.

---

1. The presentence report recommended a two-level downward adjustment for acceptance of responsibility. J.A. at 26. Judge La Plata ultimately granted the downward adjustment as well as the enhancement for a leadership role. J.A. at 79.

## II.

With respect to sentencing determinations under USSG § 3B1.1, this court has held that "[t]he district court's determination as to role in an offense is a finding that is 'heavily dependent on the facts.'" *United States v. Okayfor,* 996 F.2d 116, 122 (6th Cir.) (per curiam) (citations and quotations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993). "A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous." *Id.; United States v. Williams,* 894 F.2d 208, 213–14 (6th Cir.1990). "Congress tells us we shall give due deference to the district court's application of the guidelines to the facts." *United States v. Schultz,* 14 F.3d 1093, 1099 (6th Cir.1994); 18 U.S.C. § 3742(e) (1988).

## III.

Under the sentencing guidelines, a person convicted of criminal activity should be assessed a two-level increase in his sentence "[i]f the defendant was an organizer, leader, manager, or supervisor" in a criminal conspiracy that involved less than five participants. USSG § 3B1.1(c). The Sentencing Commission has determined that

> to qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

USSG § 3B1.1, comment. (n.2).

■ In making its determination, the sentencing court must find by a preponderance of the evidence that the defendant was a leader or organizer of the criminal activity. *United States v. Gonzales,* 929 F.2d 213, 216 (6th Cir.1991). The Sentencing Commission has advised the courts of a number of factors that may be considered in determining whether a defendant played a leadership role for sentencing purposes:

> the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4).

Alexander claims that the record below fails to establish, by a preponderance of the evidence, that he was a leader or organizer. Specifically, Alexander claims (1) that during cross-examinations, the primary witnesses against him—Dorothy Cook and Elvis Presley Jones—seemingly softened their assertion that they were "working" for or "employed" by Alexander; and (2) that "control" over codefendants is required for a leadership enhancement and the evidence did not establish that Cook or Jones were under Alexander's control.

■ With respect to Alexander's first two claims, it is not necessary that the court find evidence of each leadership factor in order to assess the two-level enhancement. *United States v. Ortiz,* 878 F.2d 125, 127 (3d Cir. 1989). Moreover, "these principles do not mean that the defendant must directly employ or control a partnership or enterprise." *Schultz,* 14 F.3d at 1099 (finding that "[o]rganizing and coordinating ... scheme of distribution that brings contraband into a community for distribution on a continuing basis should be sufficient to qualify a single individual as an 'organizer' of criminal activity").

■ After reviewing the trial record, we find that the lower court's determination that Alexander played a leadership role was supported by a preponderance of the evidence. The testimony of Officer Hope, Dorothy Jean Cook and Elvis Presley Jones supports the following conclusions: (1) Alexander supplied multiple ounces of crack to various individuals, including Cook and Jones, during the conspiracy period; (2) Alexander began supplying Cook in 1988 or 1989; (3) Cook acted as a conduit or "middle man" for Alexander's drug sales by locating customers and delivering drugs; (4) Alexander neither allowed

Cook to give out his phone number nor bring prospective buyers to his house; (5) Cook had to check with Alexander before she could bring his drugs to prospective customers; (6) Alexander processed and packaged the drugs; (7) Alexander set the prices and received all funds for the sales; (8) on occasion, Alexander gave Cook drugs in exchange for bringing him business; and (9) Alexander instructed Cook to make the arrangements for his sale to Officer Hope.

This evidence established that Alexander was a leader in the drug conspiracy, such that a two-level increase was warranted. *See, e.g., United States v. Brown,* 946 F.2d 1191 (6th Cir.1991) (leadership enhancement warranted where evidence showed defendant was dominant figure and codefendant was subordinate to him); *United States v. Castillo,* 14 F.3d 802, 807 (2d Cir.) (leadership enhancement warranted where defendant weighed and packaged cocaine that he and codefendant jointly sold to undercover officer), *cert. denied,* —— U.S. ——, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); *United States v. Fagan,* 996 F.2d 1009, 1016–17 (9th Cir.1993) (enhancement warranted where defendant supplied cocaine that codefendant delivered to buyer at defendant's residence, and defendant received and counted money from sale); *United States v. Beaulieau,* 959 F.2d 375, 380 (2d Cir.1992) (enhancement warranted where defendant weighed, packaged, and set price of cocaine delivered by codefendant to undercover police officer); *United States v. Mays,* 902 F.2d 1501, 1503 (10th Cir.1990) (enhancement warranted where defendant supplied two of his codefendants with cocaine for resale and he alone had access to their supply). Accordingly, we affirm the lower court's application of the two-level enhancement pursuant to USSG § 3B1.1.[2] *See* 18 U.S.C. § 3742; *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991).

**IV.**

Alexander's final argument on appeal is that the lower court failed to state, on the record, specific facts which it relied upon in determining that Alexander was the leader of the drug conspiracy. Although the lower court did not specifically state the factual basis for applying the enhancement, this alone is not grounds for vacating the sentence. In recognizing that trial courts can, and should, rely heavily upon evidence presented at trial in determining a defendant's role in a conspiracy, this court has held that, "[t]he district court [i]s not required to cite specific facts to support its finding regarding defendant['s] role in the conspiracy because it presided over the trial." *Okayfor,* 996 F.2d at 122 (citation omitted).

Nonetheless, we think it important and worth stating that, although not *required* under the Guidelines, it is *preferable* that trial courts indicate the factual basis for enhancing a defendant's sentence pursuant to USSG § 3B1.1. Where, for instance, as here, a trial court simply indicates "the Court does recall the facts of the trial and the Court is going to enhance [the sentence] by two points with respect to the leadership role," J.A. at 79, both the appellate court and the appellant are left to guess the precise factual basis for enhancement. This essentially compels the appellate courts to review *de novo* the record of the trial and the sentencing hearing, and to apply those facts to section 3B1.1. We do not believe that such plenary review was intended by the Sentencing Commission. Moreover, a defendant appealing an enhancement pursuant to § 3B1.1 is left to challenge *every* fact in the record that could possibly lead an appellate court to affirm the enhancement, even if different than the facts upon which the sentencing court relied.

---

**2.** Alexander also claims that his presentence report ("PSR") improperly incorporated verbatim the factual background from the United States Attorney's memorandum. This claim is without merit. The disputed portion of the PSR—paragraphs 7–18—is the statement of facts. These eleven paragraphs detail Alexander's relationship with Cook, the weight and value of the drugs purchased by Officer Hope, the time and place of

Alexander's arrest, and the weapons and contraband found on him during the arrest. J.A. at 24–25. All of this information was introduced at trial and was part of the record. Moreover, the trial judge's conclusion that Alexander was the leader of the conspiracy was not based solely on the information contained in the PSR. Rather, the trial court relied on his recollection of the evidence presented during the trial. J.A. at 79.

We do not intend to suggest that a detailed factual basis be set forth each time a sentencing court enhances a sentence pursuant to section 3B1.1. We merely intend to advise the district courts of the value of taking minimal steps to provide defendants with a clear basis for their sentence enhancements, and appellate courts with a clear basis for review. We believe such an approach is consistent with fundamental fairness and the tenor of the Guidelines. *See United States v. Kennedy,* 893 F.2d 825, 828 (6th Cir.1990) (stating that "to require the district court to clarify and publish its reasoning helps to assure the uniformity that was sought in the Sentencing Reform Act ... [and] a clear statement from the district court assures that the appeal process provided by the Sentencing Reform Act works properly in that both counsel and the reviewing court will be able to challenge and/or evaluate the district court's actions."); *see also Schultz,* 14 F.3d at 1101–02 ("A court departing upward from a defendant's calculated Criminal History Category must ... 'articulate its reasons for departing from the guidelines in language relating to the guidelines.' "); *United States v. Robison,* 904 F.2d 365, 372 (6th Cir.) ("While the district court is certainly authorized under section 4A1.3 to depart from the criminal history category, it must supply particular reasons for the departure."), *cert. denied sub nom. Smoot v. United States,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990); *United States v. Rodriguez,* 882 F.2d 1059, 1066 (6th Cir.1989) ("If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion."), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *United States v. Wells,* 878 F.2d 1232, 1233 (9th Cir.1989) (reversing district court's enhancement and remanding for more complete statement).

## V.

We find no error in the district court's determination of Alexander's role in the drug conspiracy or in the district court's applica-

tion of the Guidelines. Accordingly, Alexander's sentence is **AFFIRMED.**