NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0400n.06
Filed: June 9, 2006

No. 04-6259

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ISRAEL STALEY, )
)
    **Defendant-Appellant,** )    **ON APPEAL** FROM THE
) UNITED STATES DISTRICT
v. ) COURT FOR THE WESTERN
) DISTRICT OF TENNESSEE
UNITED STATES OF AMERICA, )
)
    **Plaintiff-Appellee.** )    **O P I N I O N**
)

**Before: Moore, Griffin, and Cudahy,**[*] **Circuit Judges.**

    **RICHARD D. CUDAHY, Circuit Judge.** Israel Staley appeals the sentence imposed

by the district court after he pleaded guilty to violating 18 U.S.C. § 1028 (a)(7), commission of

fraud by illegal use of identification documents, in conjunction with a scheme to purchase motor

vehicles using the identities of unsuspecting individuals. Staley argues that the district court

erred when it imposed a sentence under the pre-*Booker* mandatory guideline sentencing scheme

and when it imposed a three-level enhancement for acting as a manager or supervisor under

Section 3B1.1(b) of the United States Sentencing Guidelines.[1]

---

[*]The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

[1]In his brief, Staley challenged the district court's denial of a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. However, at oral argument, Staley's

1

I.

On August 7, 2003 a federal grand jury returned an indictment charging Staley with two counts of commission of a fraud by illegal use of identification documents, in violation of 18 U.S.C. § 1028(a)(7). The indictment charged Staley with two specific instances of involvement in a scheme to fraudulently purchase numerous motor vehicles by using the identities of other unsuspecting individuals. Count I pertained to Staley's attempt to fraudulently obtain a Yukon Denali in September 2001; Count II pertained to his attempt by illegal means to procure a Mazda Millenia in March 2002. On May 3, 2004, pursuant to a plea agreement, Staley pleaded guilty to Count I of the indictment.

Before sentencing, a presentence report (PSR) was prepared detailing Staley's criminal history and conduct. According to the PSR, Staley used the name and social security number of Lawrence O'Reilly to obtain a Yukon Denali vehicle from a car dealership in Kellogg, Idaho in 2001. The car dealership called the FBI after learning that O'Reilly did not order the vehicle, and it was determined that O'Reilly's identity had been compromised. Staley (posing as O'Reilly) provided his cell phone number and asked that the Yukon be delivered to his new business in Memphis, Tennessee. The FBI participated in delivering the vehicle to Staley. On September 28, 2001, the FBI arrested Staley after he accepted the vehicle at his business.

On September 28, 2001, the day he was arrested, Staley made a full confession to law enforcement officials detailing his criminal role in the fraudulent car scheme. He told police officers that he posed as O'Reilly when he spoke with the car dealership salesperson on the telephone. He further stated that his role was to meet the delivery people, accept the vehicle, and

lawyer conceded this issue, and thus there is no need for us to discuss it.

deliver it to Eddie Gatewood and Charles Monger. Staley said that Gatewood and Monger directed him in the scheme, and that they promised to pay him $1,200 for picking up the vehicle and delivering it to them. He also admitted his role in the illicit purchase of two laptop computers from Gateway Computers while using O'Reilly's identity. Finally, he admitted to fraudulently obtaining a Cadillac DeVille, valued at approximately $25,000. Staley agreed to cooperate with the FBI in Memphis, but he later failed to provide accurate information and he continued to engage in criminal conduct, thus causing the cooperation agreement to be terminated.

In March 2002 Staley once again tried to purchase a car, a Mazda Millenia, from a dealership using a stolen identity. He claimed that he had a co-signer, Stanley Stegall, but that Stegall was out of town and unable to come to the dealership. Staley showed the dealership Stegall's personal financial information as well as copies of Stegall's driver's license. After the dealership told Staley that they had to meet Stegall, Staley phoned an individual who pretended to be Stegall. However, the dealership eventually contacted the real Stanley Stegall, who did not know anything about the car purchase and thus, Staley never received the car.

After Staley was indicted for these two schemes, he continued to engage in criminal conduct. According to the PSR, he was involved in further theft of vehicles by identity theft, and he was also responsible for possession of stolen vehicles. Staley and five other individuals were provided with keys to cars parked in dealership lots. Staley and the others would then drive the vehicles off the lots, and then Staley would get identification in another person's name and apply for titles and registrations for the cars. He was found to be involved in this type of conduct for seven vehicles. The estimated total loss due to Staley's conduct was calculated in the PSR to be

3

$400,394.28.

Ten months after his indictment, on May 3, 2004, Staley entered a guilty plea on Count I of the indictment (pertaining to the theft of the 2001 red Yukon Denali) pursuant to a plea agreement. The PSR calculated Staley's sentence using the 2000 edition of the United States Sentencing Guidelines (U.S.S.G.) manual. The base level offense was set at 6, pursuant to § 2F1.1(b) of the guidelines. Nine levels were added because the loss due to Staley's actions was more than $350,000 but less than $500,000. Two levels were added under § 2F1.1(b0(2) because Staley had done "more than minimal planning." Two levels were also added because "the offense involved the unauthorized transfer or use of any means of identification." Finally, three levels were added under § 3B1.1(b) because Staley was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. Thus, the total offense level set in the PSR was 22. The resulting guidelines range was 84-105 months, based on Staley's total offense level of 22 and his criminal history category of VI.

Staley filed objections disputing the value of the stolen cars on August 24, 2004. He also objected to several of the enhancements in the PSR, citing *Blakely v. Washington*, 542 U.S. 296 (2004). He objected to the enhancements involving his role as a manager/supervisor in criminal conduct on the ground that the underlying conduct was not proven beyond a reasonable doubt to a jury, and to the PSR recommendation that there be no downward adjustment for his purported acceptance of responsibility. He also made specific objections to portions of the PSR as they pertained to the total loss associated with the offense.

A sentencing hearing was conducted on October 8, 2004. The government presented

evidence and testimony to refute Staley's objections to the PSR, including testimony by FBI agents regarding Staley's involvement in the scheme to obtain vehicles using stolen identities, which the court found credible.

The court accepted Staley's objections regarding the valuation of the stolen vehicles, and the estimated loss was reduced to $273,427.83. The court then overrruled Staley's *Blakely* objection following the mandate of the then-viable *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc). The court also overruled defendant's objection concerning the three-point enhancement for his role as a manger/supervisor of a criminal enterprise and denied any downward adjustment for acceptance of responsibility.

The court accepted as its own the findings of the PSR, with the exception of granting the government's motion that the base level offense be increased by two levels under U.S.S.G. § 3C1.2 because of the "substantial risk of death or serious bodily injury to another person" resulting from Staley's flight from a police officer during a pursuit as Staley was driving a stolen vehicle. With an adjusted offense level under the guidelines of 23, and a criminal history category of VI, Staley's guidelines range was raised to 92-115 months. The court then sentenced Staley to 104 months in prison and a period of 3 years of supervised release.

II.

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), both parties agree that Staley's sentence should be vacated and remanded for resentencing.[2] The district court applied

---

[2]The government originally contested this issue in its brief, but at oral argument it conceded that remand is appropriate.

the guidelines as if they were mandatory. Thus, there is a presumption of plain error. *United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005) ("Instead of speculating as to the district court's intentions in the pre-*Booker* world, and trying to apply those intentions to predict the same court's sentence under the post-*Booker* scheme, we are convinced that the most prudent course of action in this case is to presume prejudice given the distinct possibility that the district court would have imposed a lower sentence under the new post-*Booker* framework."). This presumption can be rebutted in cases where "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under the advisory Guidelines regime." *Id.* at 529. We find no such evidence here.

Not only were the Guidelines treated as mandatory, but the district court allowed enhancements (that Staley objected to) based on factual findings that were not presented to a jury. These enhancements increased Staley's guidelines range. According to *Booker*, this conduct violated the Sixth Amendment and thus, for this reason also, we remand this case to the district court for resentencing. *United States v. Davidson*, 409 F.3d 304, 309 (6th Cir. 2005) (A sentence "imposed on the basis of unconstitutional judicial fact-finding satis[fies] the plain-error test") (citing *United States v. Oliver*, 397 F.3d 369, 380-81).


III.

Staley argues that the district court erred in enhancing his sentence by finding that he was a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive, in accordance with § 3B1.1(b). To enhance a sentence under 3B1.1, a district court must find that a defendant exercised control over at least one other participant in a

6

supervisory, managerial, leadership, or organizational capacity. *United States v. Anderson*, 353 F.3d 490, 506 (6th Cir. 2003). "The key issue is not direct control or ultimate decision-making authority, but rather the defendant's 'relative responsibility.'" *United States v. Henley*, 360 F.3d 509, 517 (6th Cir. 2004) (citing *United States v. Gaitan-Acevedo*, 148 F.3d 577, 595-96 (6th Cir. 1998).

Here, the district court did not specify the factual basis for its decision to invoke a § 3B1.1 enhancement. Instead, the court found only that there were five or more people involved in the enterprise, and then stated that it was not able to determine from the record whether Staley was a leader or organizer, as opposed to a manager or supervisor. In *United States v. Vandeberg*, we said that although the failure to specify the factual basis for applying a § 3B1.1 enhancement "is not grounds for vacating the sentence, . . . it is preferable that trial courts indicate the factual basis for enhancing a defendant's sentence pursuant to *U.S.S.G § 3B1.1*." 201 F.3d 805, 810 (2000) (citing *United States v. Alexander*, 59 F.3d 36, 39 (6th Cir. 1995). We prefer that district courts provide a factual basis for their findings "because it provides the defendant an understanding of the enhancement and provides a meaningful basis for appellate review." *Vandeberg*, 201 F.3d at 810 (6th Cir. 2000).

The district court did not specifically state how Staley controlled the individuals involved in this enterprise. However, in some instances we may infer such control from the facts. *See United States v. Anderson*, 353 F.3d 490, 506-7 (6th Cir. 2003). The district court found that five or more people were involved in the car theft scheme, and Staley does not dispute this fact. There is some evidence to allow us to infer, based on the testimony of FBI Agent Brian Burns, that Staley controlled the four or five individuals who drove cars out of dealership lots as part of

7

the theft scheme because Staley ultimately sold these vehicles and obtained fraudulent titles and registrations for these vehicles using the identities of unsuspecting individuals.

This reasoning, however, requires us to draw attenuated inferences. The record is not fully developed as to Staley's role as a manager or supervisor. Upon remand, the district court may investigate this matter more fully and make factual findings that provide for more meaningful appellate review.

IV.

For the foregoing reasons, we vacate Staley's sentence and remand to the district court for resentencing consistent with *Booker* and this opinion.