NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0735n.06
Filed: December 3, 2008

No. 06-4295

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| JOHN A. MARTINEZ, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before: DAUGHTREY and MCKEAGUE, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

**VAN TATENHOVE**, District Judge.   John A. ("Chofo") Martinez was convicted of conspiracy to violate federal drug laws, possession with intent to distribute cocaine, and unlawful use of a communications facility.  He was sentenced to a total of 288 months in prison.  On appeal, Martinez challenges his sentence on two grounds.  He contends that the district court failed to make adequate findings on the record to support the four-level enhancement for a leadership role in the offense and that the district court improperly treated the guidelines as mandatory.  Because we disagree, we will affirm Martinez's sentence.

**I.**

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Chofo Martinez, and twenty other individuals, including his brother, Jose C. ("Joe") Martinez, Jr., and father, Jose C. ("Pops") Martinez, Sr., were charged in a fifty-count Indictment alleging that they engaged in a conspiracy to possess with the intent to distribute cocaine, crack, and marijuana. Martinez[1] was also charged with possession with intent to distribute cocaine and cocaine base and unlawful use of a communications facility. This matter proceeded to trial, and the jury returned guilty verdicts against Martinez on all counts except one.[2]

The United States Probation Office subsequently prepared a presentence report ("PSR") which calculated Martinez's base offense level at 36. The PSR also recommended a four-level enhancement to Martinez's offense level pursuant to U.S.S.G. § 3B1.1(a) based on his role as a leader or organizer of a criminal activity involving five or more participants. With a total offense level of 40 and a criminal history category IV, Martinez's sentencing guideline range was 360 months to life.[3]

The district court conducted a sentencing hearing on September 8, 2006. At that hearing, Martinez argued that his offense level should be set at 32 based on the quantity of drugs involved as determined by the jury. The court agreed, concluding that an offense level of 32 "produces a guideline sentence which is both reflective of the drug level at an appropriate level as articulated by the jury, and the availability of a sentence sufficient but not greater than necessary to reflect the seriousness of the crime." Although Martinez also objected to the four-level leadership

---

[1]Unless otherwise noted, references solely to "Martinez" are meant to refer to the Appellant, John A. "Chofo" Martinez.

[2]The jury acquitted Martinez on Count Three which charged that he possessed with intent to distribute crack cocaine.

[3]Pursuant to an objection by Martinez, the district court reduced the defendant's criminal history category from IV to III.

enhancement, the district court overruled Martinez's objection and stated:

> I will, however, under such cases as *Vonner*, *Ferguson*, and others out of the circuit impose, as recommended by the probation officer who wrote this report, the four-level enhancement for role in the offense. Clearly if the jury trial and the jury verdict reflected anything, it was that this defendant was, if not the organizer, an organizer and leader of this conspiracy. And I will sentence the defendant at a Criminal History III with a guideline level of 36, which produces 235 to 293 months.

Having resolved the objections and calculated the guideline range, the district court then addressed the factors set forth in 18 U.S.C. § 3553(a). After hearing arguments from the parties, the court sentenced Martinez to imprisonment for a total of 288 months. This appeal followed.

## II.

### A.

Martinez argues that the district court erred by failing to explain the basis for imposing the four-level leadership enhancement. He further contends that such an enhancement is not supported by the facts. We disagree and find that the district court properly applied the four-level leadership enhancement to Martinez's recommended sentence.

Pursuant to U.S.S.G. § 3B1.1(a), an enhancement of four levels is appropriate if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." More specifically, "the defendant must have been the organizer, leader, manager, or supervisor *of one or more other participants*." U.S.S.G. § 3B1.1 cmt. n.2 (emphasis added). In making this determination, a court should consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Hernandez*, 227 F.3d 686, 699-700 (6th Cir. 2000) (quoting U.S.S.G. § 3B1.1 cmt.

n.4). These factors, however, "are only designed to provide guidance to the sentencing court, and there is no requirement that each factor be met." *United States v. Green*, 202 F.3d 869, 871 (6th Cir. 2000).

Citing § 3B1.1, the PSR in this case recommended that Martinez's offense level be increased four levels. Overruling Martinez's objection to the enhancement, the district judge stated, "clearly if the jury trial and the jury verdict reflected anything, it was that this defendant was, if not *the* organizer, *an* organizer and leader of this conspiracy." This statement plainly refers to evidence presented at trial and observed by the judge, but it does not articulate a specific factual basis or a consideration of the factors listed above. To be sure, such an articulation is not only preferred, *see United States v. Alexander*, 59 F.3d 36, 39 (6th Cir. 1995) (preferable that court articulate reasons for finding on the record), but also particularly helpful to a reviewing court in circumstances like this. Despite that preference, however, a district court's failure to specify the factual basis for applying a § 3B1.1 enhancement "is not grounds for vacating the sentence." *United States v. Vandeberg*, 201 F.3d 805, 810 (6th Cir. 2000) (quoting *Alexander*, 59 F.3d at 39). Instead, that failure merely compels this court to conduct a *de novo*[4] review of the record to determine whether the enhancement is applicable, or whether remand is required. *Id.* at 811 n.2.

Here, the record supports the district court's conclusion that Martinez was a leader or

---

[4]Several panels of this Court have noted that the standard of review for a § 3B1.1 enhancement is subject to some debate since the Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 66 (2001). *See, e.g.*, *United States v. Walls*, No. 06-2079, slip op. at 5 (6th Cir. Nov.13, 2008); *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007); *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005); *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004). In *Buford*, the Supreme Court held that, due to the fact-bound nature of the legal decision, an appellate court should review deferentially, rather than *de novo*, a district court's application of U.S.S.G. § 4B1.2. *Buford*, 532 U.S. at 66. In this case, we need not determine whether *Buford* requires us to alter the standard of review we apply in reviewing § 3B1.1 enhancements because the district court's failure to articulate the factual basis for the leadership enhancement requires *de novo* review.

organizer under § 3B1.1(a). For example, Martinez acknowledges that Robert Fleming testified that he would often hold drugs for Martinez and others. Martinez further notes that Fleming "appears to be the only person over whom Mr. Martinez exercised any decision making authority or who took direction." Although this may not amount to a concession on the part of Martinez, the record supports such a finding. At trial, Robert Fleming testified that Martinez and another co-conspirator obtained five kilograms of cocaine and brought it back to a motel. Fleming was in the motel room with the cocaine when police arrived. Of particular importance here is Fleming's testimony that he was "sitting on," or watching, the drugs for Martinez and the other individual. Thus, Fleming's testimony provides a concrete example of Martinez exercising control over, or directing, another participant in the conspiracy.

As noted above, in order for Martinez to be subject to the leadership enhancement, he "must have been the organizer, leader, manager, or supervisor *of one or more other participants*." U.S.S.G. § 3B1.1 cmt. n.2 (emphasis added). The specific language of this enhancement demonstrates that Martinez need not have been an organizer or leader of all or most of the other participants, but rather only one of them. *See United States v. Bennett*, 291 F.3d 888, 897 (6th Cir. 2002). Because Martinez directed and controlled the actions of at least one other participant, namely Robert Fleming, the district court did not commit error by imposing the leadership enhancement pursuant to § 3B1.1.

The leadership enhancement is further supported by evidence of Martinez's continuing distribution of illegal drugs. Martinez argues that the enhancement was not warranted because the trial testimony suggests that he acted primarily as a supplier rather than as a leader or organizer. It is true that much of the evidence presented by the government during the six-day trial concerned Martinez's involvement in large-scale narcotics distribution activities. While it is also true that "mere buying and selling, without other evidence, is not sufficient to show that a defendant is a

leader, organizer, manager, or supervisor . . . these principles do not mean that the defendant must directly employ or control a partnership or enterprise." *United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994) (internal citations omitted). Rather, this Circuit has held that "[o]rganizing and coordinating an interstate . . . scheme of distribution that brings contraband into the community for distribution on a continuing basis should be sufficient to qualify a single individual as an 'organizer' of criminal activity." *Id.*

Under this standard, there is little doubt that Martinez qualifies as a leader or organizer. The evidence at trial established that Martinez engaged in prolonged and large-scale narcotics distribution. For example, Anthony Hobbs testified that he began purchasing small amounts of cocaine from Martinez near the end of 1999. Over time, he increased those quantities to the point where he was buying one to two kilograms per week. Hobbs estimated that between 1999 and 2002, he purchased sixty to seventy kilograms of cocaine from Chofo.

Ricardo Medrano, who operated in Toledo but whose sources were in Texas, served as one of Chofo's drug suppliers. Initially, Martinez only bought marijuana from Medrano, but later he bought cocaine on a regular basis as well. Medrano would obtain the cocaine from Alex Serrato, his Texas source. Carl Sayre acted as the drug courier who would transport the money from Toledo to Texas and bring the cocaine back from Serrato to Medrano. Typically, once the drugs made it back to Toledo, Medrano and Brian Summers would distribute the cocaine. Medrano testified that he sold Martinez one to five pounds of marijuana twice a week, and one to two kilograms of cocaine per week for almost a year. According to Medrano, Chofo eventually "moved him out of the way" and began dealing directly with Alex Serrato. Indeed, Sayre testified that on his last trip to Texas in December 2002, he returned with ten kilograms of cocaine, five of which were picked up by Chofo and Summers.

As noted previously, Robert Fleming was watching four kilograms of cocaine for Martinez at the Red Roof Inn when he was arrested by law enforcement in December 2002. Fleming testified that around that same time Chofo had received a separate five-kilogram cocaine delivery at the Red Roof Inn from his other source, an Hispanic male from Chicago. Fleming corroborated Medrano's testimony and stated that Medrano and Summers were moving about ten kilograms of cocaine every two weeks and that they were only selling to two individuals, Chofo and another man named Buster. Fleming further testified that he was present for approximately twenty transactions during the fall of 2002 in which Chofo purchased at least one kilogram of cocaine.

Several other individuals testified about Martinez's involvement in narcotics distribution. Kelvin Gist stated that he purchased two kilograms of cocaine from Martinez in 2002. He testified that during the summer of 2004, he bought approximately 700 to 800 pounds of marijuana from Chofo. Similarly, Markelle Canada testified that he bought ten pounds of marijuana from Martinez in the summer of 2002. Canada also indicated that Chofo was the cocaine source for an individual named Antuan Wynn. Finally, Tom Cortez, a confidential informant, testified that prior to his cooperation he purchased a total of twenty kilograms of cocaine from Ruben Vargas between 2002 and 2004. According to Cortez, Martinez was Vargas's source of cocaine.

The testimony summarized above demonstrates that Martinez was involved in significant drug trafficking activities. To be sure, his involvement was beyond "merely" buying and selling drugs. In fact, the evidence establishes that Martinez managed and coordinated an interstate scheme of distribution that brought drugs into the Toledo area on a continuing basis. Consequently, the district court properly applied the leadership enhancement pursuant to § 3B1.1.

## C.

In his second argument, Martinez alleges that the district court treated the guidelines as

mandatory, rather than advisory, in violation of the Supreme Court's holding in *Booker*. The district court, according to Martinez, "appears to have treated the sentencing guidelines as mandatory, in that it explicitly determined the guideline range and sentenced only within that range."

In the post-*Booker* landscape, appellate courts review a district court's sentencing determination, "under a deferential abuse-of-discretion standard," for reasonableness. *Gall v. United States*, 552 U.S. ----, 128 S. Ct. 586, 597 (2007). This standard applies whether the sentence is "inside, just outside, or significantly outside the Guidelines range." *Id.* at 591. In *Gall*, the Supreme Court directed the courts of appeals to "first ensure that the district court committed no significant procedural error." *Id.* at 597. So long as the "district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

Martinez's argument that the district court improperly treated the guidelines as mandatory amounts to a claim of procedural error. Indeed, a district court necessarily abuses its sentencing discretion if it "commit[s] [a] significant procedural error, such as . . . *treating the Guidelines as mandatory . . . .*" *Id.* (emphasis added). Appellate review for procedural reasonableness consists of three steps. *United States v. Bolds*, 511 F.3d 568, 579 (2007). First, this Court must ensure that the district court "correctly calculat[ed] the applicable Guidelines range," which is "the starting point and initial benchmark" of its sentencing analysis. *Id.* The advisory guidelines range, however, is only one of several factors that the district court must consider at sentencing.[5] *See* 18 U.S.C. §

---

[5]Section 3553(a) requires a district court to consider the following factors when imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed –

3553(a). Thus, this Court's second task is to ensure that the district judge gave "both parties the opportunity to argue for whatever sentence they deem appropriate" and then "considered all of the § 3553(a) factors to determine whether they support the sentence requested by [each] party." *Bolds*, 511 F.3d at 579-80 (quoting *Gall*, 128 S. Ct. at 596). After evaluating the parties' arguments in light of the § 3553(a) sentencing factors, the judge will impose a sentence and must explain his reasons for selecting the sentence imposed. Accordingly, the final task on review is to ensure that the district court has "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 580.

Here, the district judge committed no procedural error. As required, the court first calculated

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement (A) issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

the applicable guidelines range. Regarding the criminal history category, the district court granted Martinez's objection and lowered his criminal history category from IV to III. Conversely, the district court rejected the government's request to set Martinez's base offense level at 36 due to relevant conduct of other members of the conspiracy. Despite acknowledging the authority to attribute additional drug quantities to Martinez, the district court concluded that a level 32 "produces a guideline sentence which is both reflective of the drug level at an appropriate level as articulated by the jury, and the availability of a sentence sufficient but not greater than necessary to reflect the seriousness of the crime." The district judge then applied a four-level enhancement for Martinez's role in the offense. Finally, the district court correctly determined an advisory guideline range of 235 to 293 months for a criminal history category III and offense level of 36.

After allowing the parties to argue for what they deemed an appropriate sentence, the district court stated:

> [T]here were a significant amount – amounts of drugs distributed in this community through yours and other's efforts, and the period of the conspiracy was at least ten years. During that ten years a lot of drugs were pumped into this community to the detriment of an awful lot of people. Your problem is you got caught, not once, but twice, and the second time is more significant than the first.
>
> We must protect the community against similar acts, not only by others, but by you. And this sentence reflects that. In sentencing I've looked at Section 3553(a) of Title 18 of the United States Code. That instructs judges in sentencing that the sentence shall be sufficient but not greater than necessary to make sure that it reflects the seriousness of the nature and extent of the crime I've already discussed, that it will deter you for a significant period of years, and others thinking about getting into this business for a significant period of time, that it will protect the public from at least your distribution of drugs as testified to in front of and found by a jury, and it will provide you with sufficient time for rehabilitation.

This colloquy demonstrates the district court's consideration of the § 3553(a) factors in fashioning an individualized assessment of Martinez based on the facts presented.

In sum, a review of the record reveals that the district court correctly calculated the applicable

guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the § 3553(a) factors, and thoroughly documented his reasoning. *See Gall*, 128 S. Ct. at 598. Accordingly, the district court did not treat the guidelines as mandatory, and therefore, did not commit any procedural error.[6]

## III.

For the foregoing reasons, we affirm Martinez's sentence.

---

[6]Notably, Martinez does not contend that his sentence is substantively unreasonable. Nonetheless, because he was sentenced within the guidelines range, a rebuttable presumption of reasonableness would attach to his sentence. *See United States v. Duane*, --- F.3d ----, 2008 WL 2755571 (6th Cir. 2008); *see also United States v. Rita*, 551 U.S. ----, 127 S. Ct. 2456, 2467 (approving of this presumption).