**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0518n.06

No. 08-2293

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 17, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| MAMOUDOU BATHILY, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

Before:  BATCHELDER, Chief Circuit Judge; MOORE and COLE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Mamoudou Bathily pleaded guilty pursuant to a written plea agreement to two counts of a seven-count superseding indictment and received a sentence of forty-eight months of imprisonment:  twenty-four months of imprisonment on Count One for conspiracy to commit access-device fraud, mail fraud, and/or identity theft in violation of 18 U.S.C. § 371; and a consecutive twenty-four months of imprisonment, the statutory mandatory term, on Count Four for aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (c)(5), and (b). He challenges his sentence for Count One as procedurally unreasonable, asserting that the district court sua sponte enhanced his sentence in violation of the notice requirement in Federal Rule of Criminal Procedure 32 and failed to address his arguments that the Sentencing Guidelines for fraud offenses yield an excessive sentence in light of the 18 U.S.C. § 3553(a) factors.

## I. BACKGROUND FACTS AND PROCEDURE

Bathily, with the assistance of at least his three co-defendants, utilized stolen identification information from Chase Bank customers to obtain credit cards and money to purchase goods that they later resold, splitting the profits. Bathily's conduct spanned from Chicago to Grand Rapids, Michigan, to New York City, involving twenty-five victims, and eventually came to the attention of Chase Bank officials, who collaborated with the U.S. Postal Inspection Service in Grand Rapids, Michigan, where Bathily had requested many of the fraudulent credit cards to be sent. Bathily was arrested after he personally signed for the delivery of a fraudulently produced credit card in Grand Rapids. Bathily and his co-defendants were subsequently charged in a seven-count superseding indictment.

Bathily pleaded guilty pursuant to a written plea agreement to only Counts One and Four of the superseding indictment and proceeded to sentencing. Utilizing the 2008 edition of the United States Sentencing Commission Guidelines Manual, the Presentence Investigation Report ("PSR") started with a base offense level of six for Count One and recommended a twelve-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2B1.1(b)(1)(G) for an intended aggregate loss of $305,177.92, a two-level enhancement under U.S.S.G. § 3B1.1(c) for his role in the offense, and a three-level reduction for acceptance of responsibility, arriving at a recommended total offense level of seventeen. PSR at ¶¶ 53–64. With a criminal history category of I, the PSR thus recommended a Guidelines range of twenty-four to thirty months of imprisonment for Count One. *Id.* at ¶¶ 52, 97. Count Four, under the Aggravated Identity Theft statute, 18 U.S.C. § 1028A, required an additional mandatory term of imprisonment of twenty-four months to be imposed consecutive to Bathily's term of imprisonment for Count One. *Id.* at ¶¶ 65, 96–97. Bathily raised

2

only one objection to the PSR, contesting the amount of loss suffered by one of the victim banks.[1] *Id.* at add. 1.

Bathily's sentencing memorandum focused on the 18 U.S.C. § 3553(a) factors, requesting the district court to "give[] less weight and deference" to the fraud Guidelines "because, like the crack guideline at issue in *Kimbrough*, it does not achieve the § 3553(a) purposes of punishment," based in part on the Sentencing Commission's "conce[ssion] that they implemented sentences 'significantly more severe than past practice' for a number of offenses, including fraud cases, and that therefore the fraud guidelines are not based on empirical evidence." Dist. Ct. Doc. ("Doc.") 92 (Sent. Mem. at 3–4). He specifically "request[ed] a downward departure or variance to account for the nature and circumstances of the offense as well as his history and characteristics, which suggest he is unlikely to re-offend" and to account for "the fact that the fraud guidelines result in a sentence that is greater than necessary to accomplish the goals of sentencing." *Id.* at 7–8. Bathily did not include a preferred below-Guidelines sentence in his memorandum, but requested that the court impose only "the mandatory minimum" twenty-four months of actual imprisonment, the mandatory minimum for Count Four (implicitly requesting a non-custodial sentence for Count One).[2]

At the very beginning of the sentencing hearing, the district court confirmed that neither party had any objections to the PSR and that Bathily had read and did not object to the PSR. Doc. 98

---

[1]Bathily did include a footnote in his sentencing memorandum "to clarify" the PSR's characterization of his role—he stressed that "although he is not objecting to the leadership enhancement in ¶ 57 of the PSR, he was not the mastermind of this operation, nor did he have to recruit others to participate." Doc. 92 (Sent. Mem. at 6 n.2).

[2]The government opposed this suggestion, noting that 18 U.S.C. § 1028A(b)(3) "expressly prohibited" considering the mandatory consecutive sentence for Count Four to reduce the sentence for the underlying crime. Doc. 93 (Substantial Assistance Mem. at 2 n.1).

(Sent. Tr. at 2–3). Bathily's counsel then withdrew his restitution objection and stated that he had no objections at that time. *Id.* at 3. Immediately thereafter, the district court indicated that it believed that the recommended two-level enhancement under U.S.S.G. § 3B1.1 should be a three-level enhancement, even though "it doesn't appear" that five or more people were involved in more than a "tangential" way. *Id.* at 3–4. The court stated that "this is an extensive one, and I think Mr. Bathily's leadership here is fairly - - intellectually and financially, it's rather sophisticated." *Id.* at 4. The court then noted that the new adjusted offense level was eighteen before entertaining the parties' arguments. *Id.* at 3–4.

Following this announcement, Bathily's counsel argued for a downward variance under § 3553, stating that when the court "considers the factors set forth in [§] 3553, I think that most of them weigh in my client's favor in terms of fashioning a sentence that's below the guideline range or takes into account his extraordinary family life history and circumstances." *Id.* at 4. Counsel asserted that Bathily's lack of a criminal record, difficult upbringing in Africa, educational achievements, and family support, as well as his low statistical likelihood of recidivism, warranted a lesser term of imprisonment "at the low end of the range [recommended by the PSR] or at the minimum sentence available to the Court." *Id.* at 4–7. Bathily addressed the court to express his remorse for his crime, explaining, when pressed, that he was motivated by greed. *Id.* at 7–12. The government argued "for a significant deterrent sentence," but moved for a four-level substantial-assistance downward departure, which the court accepted as a three-level departure to an adjusted offense level of fifteen before it considered the § 3553(a) factors.[3] *Id.* at 13–14.

---

[3]The district court did not state its Guidelines range calculation, but it indicated at the outset of the sentencing hearing that it had received the PSR and it made reference to the PSR calculations. Bathily does not challenge his sentence based on this failure, and the district court

4

The court then began a short but detailed statement of its reasoning. The court found "that the nature and circumstances of this offense are . . . egregious" because "[i]t crosses state lines," "destabilizes not only banking proceedings, but credit proceedings," "causes people to lose faith in the system of commerce and the system of credit and credit cards and identity which is kind of at the heart of people's commercial activity, and the nature, the widespread nature of this is really upsetting." *Id.* at 14. The court stated that Bathily's history and characteristics of "spending the first 13 years in Timbuktu, Mali, and going from there on to one school to another and coming to the United States and navigating at least the commercial system like he has indicates we have a very, very intelligent young man here at age 29," but the court stressed that Bathily's "intelligence was unfortunately used for something not very constructive, but in a greedy, harmful way to others." *Id.* at 15. The court noted that its "duty to impose a sentence sufficient, but not greater than necessary to comply with the federal sentencing statute not only requires the Court to look at the seriousness of this offense, but to promote respect for law." *Id.* The court next addressed "the deterrence of a sentence in this kind of matter, which requires the Court to look further than merely Mr. Bathily and what he did, but [to] look to the larger community that's affected by this . . . and . . . [to] the protection the public deserves from the continued conduct of this kind." *Id.* at 15–16. The court prefaced its statement of Bathily's forty-eight-month sentence with,

> the Court believes that the following should be the sentence of this Court to clearly and adequately reflect not only the interests that the government has in that sentence, but also the interest Mr. Bathily has in being able to serve his sentence, to be able to learn from this sentence, and to be able to go on with his life and obviously by hard

---

sentenced him to the top of the Guidelines range for Count One—a criminal history category of I and an adjusted offense level of fifteen yields a Guidelines range of eighteen to twenty-four months of imprisonment.

work, diligence, and a good moral ethic be a successful, productive citizen of this world.

*Id.* at 16. In response to the court's question of whether there was "[a]ny legal objection to the sentence imposed," Bathily's counsel preserved his objection to the additional one-level enhancement under § 3B1.1. *Id.* at 17–18.

## II. ANALYSIS

### A. Standard of Review

> After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we review sentences "for reasonableness—including for procedural error in the calculation of the guideline range such as defendant asserts in this case." *United States v. Bartee*, 529 F.3d 357, 358 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38 (2007)). Thus, when reviewing a district court's sentencing determination, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, [552 U.S.] at [51].

*United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009).

### B. Rule 32(h) & Sua Sponte Enhancement Under U.S.S.G. § 3B1.1(b)

Bathily argues that his sentence is procedurally unreasonable because the district court imposed a three-level enhancement under U.S.S.G. § 3B1.1(b) without the prior notice required under Federal Rule of Criminal Procedure 32,[4] leaving counsel without the means to present an argument against this enhancement other than a blanket objection at the sentencing hearing. Because

---

[4]Federal Rule of Criminal Procedure 32(h) provides,
Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.
Fed. R. Crim. P. 32(h).

6

the district court's application of § 3B1.1 under subsection (b) rather than subsection (c) did not constitute a "departure" that required notice within the meaning of Rule 32(h), we disagree.

The Supreme Court recognizes that "'[d]eparture' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 128 S. Ct. 2198, 2202 (2008). The Court has noted that it intended the notice requirement in Rule 32—promulgated in furtherance of its opinion in *Burns v. United States*, 501 U.S. 129 (1991)—to be "applied to a narrow category of cases" that utilized a subcategory of departures under 18 U.S.C. § 3553(b) "that were based on 'a ground not identified as a ground for . . . departure either in the presentence report or in a pre-hearing submission.'" *Irizarry*, 128 S. Ct. at 2202 (quoting *Burns*, 501 U.S. at 138–39); *see United States v. Jordan*, 544 F.3d 656, 671 & nn.12–13 (6th Cir. 2008) (holding that a loss calculation made to apply § 2B1.1 is not a departure), *cert. denied*, 129 S. Ct. 1382 (2009). "A sentence outside the Guidelines based on Chapter 5 of the Guidelines is a 'departure' or 'Guideline departure,' . . . ." *Jordan*, 544 F.3d at 671 n.12 (concluding that district court did not utilize a departure because it "did not refer to any of the Chapter 5 bases for departure"); *see also United States v. Blackie*, 548 F.3d 395, 403 (6th Cir. 2008) (explaining the difference between a Guidelines "departure" and a § 3553(a) "variance" for Rule 32(h)). "A Guidelines 'departure' refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range." *United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009).

Here, the district court disagreed with the subsection of § 3B1.1 that the PSR recommended to calculate the Guidelines range, but the court did not "depart" from the Guidelines after it had established an advisory range. *Cf. United States v. Caseslorente*, 220 F.3d 727, 734–36 & n.6 (6th

7

Cir. 2000) (explaining that an upward departure may be warranted for activity that does not qualify within the meaning of § 3B1.1 for a sentencing enhancement). An enhancement made pursuant to Chapter 3 is an "adjustment" applied in the district court's process of calculating an advisory Guidelines sentencing range rather than a means of "departure" from that range once calculated. *See* U.S.S.G. § 1B1.1. We have previously rejected the argument that Rule 32 notice applies to a district court's application of the Guidelines provisions, holding that the Rule "is limited to departures from the Guidelines and does not extend to require notice when the district court plans to *apply* the Guidelines in a manner different from what is recommended in the presentence report." *United States v. Hayes*, 171 F.3d 389, 393 (6th Cir. 1999). The sua sponte application of a sentencing enhancement not recommended in the PSR or reliance on an alternative basis to apply a Guidelines provision is not a departure that violates Rule 32. *United States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998) ("*Burns* does not require notice of all possible sentencing factors. A district court is always free to accept or disregard a probation officer's findings in a presentence investigation report." (citations omitted)). Because "[a] defendant is, of course, on notice of the contents of the Guidelines," "the legal determination to apply a particular provision is one that defense counsel can more reasonably be expected to anticipate, and to respond to at the sentencing hearing on the basis of the known facts." *Hayes*, 171 F.3d at 393.

We conclude that the district court did not err by failing to comply with Rule 32(h) because that notice requirement does not apply when a sentencing enhancement is applied under Chapter 3.

## C. Application of U.S.S.G. § 3B1.1(b)

As an alternative argument, Bathily contends that the district court committed procedural error by failing to state a sufficient factual basis for the § 3B1.1(b) enhancement. We review de novo the legal question of "[w]hether a district court is required to make factual findings on the record."[5] *United States v. Vandeberg*, 201 F.3d 805, 809 (6th Cir. 2000).

> This Circuit has decided that the failure to specify the factual basis for applying a § 3B1.1 enhancement "is not grounds for vacating the sentence." *United States v. Alexander*, 59 F.3d 36, 39 (6th Cir. 1995). The *Alexander* Court stated that "although not required under the Guidelines, it is preferable that trial courts indicate the factual basis for enhancing a defendant's sentence pursuant to U.S.S.G. § 3B1.1." *Id.* A description of the factual basis for the enhancement is important because it provides the defendant an understanding of the enhancement and provides a meaningful basis for appellate review. *Id.* at 39–40.

*Vandeberg*, 201 F.3d at 809–10. However, where "the District Court failed to articulate the factual basis for the enhancement, we are compelled to conduct a de novo review of the record and determine whether the enhancement is applicable, or whether remand for further findings is required." *Id.* at 811 n.2. "The government bears the burden of proving that the enhancement applies by a preponderance of the evidence." *Id.* at 811.

Here, the district court failed to explain its rationale for finding that Bathily's offense conduct "involved five or more participants or was otherwise extensive" under § 3B1.1(b). It seems that the court offhandedly rejected the idea that "five or more participants" were involved within the meaning

---

[5]We have not yet decided what standard of review applies to a § 3B1.1 determination that a district court *did* make, but "'it is clear that factual findings made by the district court are reviewed for clear error.'" *United States v. Young*, 553 F.3d 1035, 1053 (6th Cir.) (quoting *United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008)), *cert. denied*, 130 S. Ct. 204 (2009); *cf. United States v. Baker*, 559 F.3d 443, 449 (6th Cir. 2009) (seeming to review § 3B1.1(a) enhancement for clear error); *see also United States v. Solorio*, 337 F.3d 580, 600–01 (6th Cir.) (analyzing the court's application of § 3B1.1 under both clear error and de novo standards because proper standard not yet decided), *cert. denied*, 540 U.S. 1063, 540 U.S. 1067 (2003).

of § 3B1.1, and instead found that Bathily's conduct was "otherwise extensive" by focusing on the "width, breadth, scope, complexity and duration of the scheme"—factors that this court has held are not relevant to a § 3B1.1 analysis. *See United States v. Anthony*, 280 F.3d 694, 699–700 (6th Cir. 2002) (rejecting "the alternative factors relied upon in [*United States v.*] *Dietz*[, 950 F.2d 50, 53 (1st Cir. 1991)]" in favor of the then-minority view) (internal quotation marks omitted); *accord United States v. Thomas*, No. 08-6496, 2010 WL 1489270, at *3 (6th Cir. Apr. 14, 2010) (unpublished opinion). Instead, in *Anthony* we chose to follow the then-minority of our sister Circuits and require an "otherwise extensive" finding to be made only "when the combination of knowing participants and non-participants in the offense is the *functional equivalent* of an activity involving five criminally responsible participants." *Anthony*, 280 F.3d at 699 (emphasis added). This "functional equivalence" test requires consideration of three factors:

> "(i)  the number of knowing participants;
> (ii)  the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; and
> (iii)  the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme."

*Id.* at 701 (quoting *United States v. Carrozzella*, 105 F.3d 796, 804 (2d Cir. 1997)). The district court clearly made no attempt to apply this test, one that "requires more than a simple summation of participants and non-participants" but rather consideration of "how significant the role and performance of an unwitting participant was to the ultimate criminal objective" before a non-participant may be counted for § 3B1.1 purposes. *Id.*

We conclude that we are unable to apply this test on de novo review because crucial findings of fact are missing. The government, which bore the burden of proving that the enhancement applied, made no statements at the sentencing hearing regarding the district court's decision to

10

impose three levels under § 3B1.1(b) instead of the PSR's recommended two-level § 3B1.1(c) enhancement, to which it had not objected. And in its brief on appeal, the government did not address the sufficiency of the factual basis for the enhancement other than to indicate summarily that the PSR information supported the adjustment.[6] *See* Appellee Br. at 18 n.5 (arguing that Bathily could not prove prejudice from lack of Rule 32 notice). Although Bathily did not object to the factual basis for the § 3B1.1*(c)* enhancement recommended in the PSR, we disagree with the government's conclusory assertion that the PSR contains sufficient factual information to support an "otherwise extensive" finding for § 3B1.1*(b)* under our precedent. *Cf. United States v. Darwich*, 337 F.3d 645, 667 (6th Cir. 2003) ("[E]xclusive reliance on the PSR when a matter is in dispute cannot be considered a ruling."). Had the district court engaged in the relevant factual analysis, it may well have concluded that five "participants"—knowing or unknowing—existed within the meaning of § 3B1.1 and its Application Notes.[7] *Cf. Anthony*, 280 F.3d at 698 (noting that courts may

---

[6]Bathily failed to articulate any recognition that *Anthony* governed his alternative § 3B1.1 argument until oral argument, and at that time the government did not elaborate on its conclusory assertion that the PSR supported a § 3B1.1(b) enhancement. The government's response to Bathily's factual basis argument in its brief on appeal, however, argued that Bathily's four "knowing accomplices" in addition to the "many other unwitting participants" referenced in the PSR were sufficient to support the district court's § 3B1.1(b) conclusion. Appellee Br. at 15 n.3. By referencing the number of participants, the government was clearly on notice of the *Anthony* requirements, as they should be regarding our binding precedent. Although we note that Bathily did not present an explicitly *Anthony*-based argument to the district court at sentencing, Bathily did clearly preserve his objection to the district court's application of § 3B1.1(b) at the sentencing hearing in response to the district court's *Bostic* question. Doc. 98 (Sent. Tr. at 17–18). We do not believe that either the district court or the government could have interpreted this objection as going to anything other than the factual basis that the district court utilized to apply § 3B1.1(b), as there was no other discussion related to the enhancement during the hearing.

[7]The PSR indicates that at least three additional individuals other than Bathily's co-defendants were involved in Bathily's conduct to some extent, but the information provided is insufficient to reach any definitive conclusions regarding these, or any other, individuals' involvement. *See* PSR at ¶ 28 (noting that Bathily received co-defendant Kwame McCauley's

11

"count as participants persons who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance"). But the district court failed to engage in the analysis required, and the record is insufficient for us to decide this issue in the first instance.

### III. CONCLUSION

For these reasons, as did the *Anthony* court, we conclude that the district court's § 3B1.1(b) analysis relied on impermissible factors, and we **VACATE** Bathily's sentence and **REMAND** for further factual findings and for resentencing. *Id.* at 701 (concluding that the district court's § 3B1.1(a) finding rested "upon a consideration of impermissible factors" and remanding for the court to apply the proper analysis). We decline to address Bathily's second procedural unreasonableness argument because it is not dispositive. To the extent that Bathily argues that the district court failed adequately to address and explain its rationale for rejecting Bathily's argument for a downward variance based on his unique characteristics and a policy dispute with the fraud Guidelines, he may address these arguments before the district court on resentencing. *See Spears v. United States*, — U.S. —, 129 S. Ct. 840 (2009); *Kimbrough v. United States*, 552 U.S. 85 (2007); *see also United States v. Camacho-Arellano*, — F.3d —, 2010 WL 2869394, at *3–6 (6th Cir. 2010).

---

information regarding his willingness to sell identity information from an unnamed "acquaintance"); *id.* at ¶ 37 (noting that co-defendant Sarah B. Eldridge's boyfriend traveled with Bathily and Eldridge from Grand Rapids to Chicago on at least one occasion when they utilized fraudulently obtained credit cards in furtherance of their crimes); *id.* at ¶¶ 41, 46 (noting that Yvonne Ingabire, the mother of Bathily's child, was responsible for "making false statements to a federal agent regarding her relationship with Mr. Bathily" and "attempt[ing] to hinder and/or obstruct their investigation by removing all of his belongings from her residence pursuant to Mr. Bathily's instructions").